IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, July 22, 2009

## IN RE: T.H.; A Child Under Eighteen (18) Years of Age; KAREN RILEY v. FRANKIE SUMMEOUR

**Direct Appeal from the Circuit Court for Knox County**
**No. 107071      Hon. Bill Swann, Judge**

**No. E2009-00655-COA-R3-JV  - FILED AUGUST 27, 2009**

This case arose as a dispute over the custody of the minor child between the paternal aunt of the child and the maternal great aunt of the child. Following an evidentiary hearing, the Trial Court eventually awarded custody of the child to Karen Riley. Frankie Summeour has appealed. We affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Ben H. Houston, II., Knoxville, Tennessee, for appellant, Frankie Summeour, the Guardian Ad Litem, Jennifer Bjornstad, and the Minor Child's mother, Nashira Sherrod.

## OPINION

This case originated in the Knox County Juvenile Court, wherein the mother, Nashira Sherrod, filed for legal custody of her child, T.H., after T.H.'s father and legal custodian passed away. A guardian ad litem was appointed for the child, and the mother was granted temporary custody. Karen Riley, the paternal aunt, then filed a petition for custody, asserting the mother had mental health issues, and temporary custody was granted to Ms. Riley.

Frankie Summeour then filed a petition for custody of the child, asserting that Ms.

Riley had been leaving town to take care of business in Florida, and that she left the child with different people. Ms. Summeour stated that she was the child's maternal great-aunt, and at a hearing Ms. Riley was given temporary legal custody of the child pending further hearing, provided that she not take the child more than 100 miles away, and the mother was granted visitation. Physical custody was split between Ms. Riley and Ms. Summeour, with Ms. Riley having custody from June 1 to July 12 (the date of the hearing), and Ms. Summeour having custody from April 28 to June 1.

The guardian ad litem then filed a Petition for Contempt, asking the Court to find Ms. Riley in contempt for not allowing the mother to visit with the child, and for failing to allow the guardian to interview the child. Ms. Riley was ordered to bring the child to Juvenile Court on a certain date so that the guardian could meet with the child. Riley failed to appear on that date, and the Court entered another Order finding that Ms. Riley had removed the child to Florida in violation of the Court's prior orders and had enrolled her in school there. The Court changed custody from Ms. Riley to Ms. Summeour, and ordered that the child be given to Ms. Summeour immediately.

A hearing was held on March 30, 2007, and the child was found to be dependent and neglected, and custody was awarded to Ms. Summeour. The Court entered a Custody Order, finding that Ms. Riley had misled the Court in that she never really intended to move to Tennessee, and Ms. Riley would not return the child from Florida for almost three months despite numerous orders telling her to do so. Also, that Ms. Riley took the child to Florida in violation of the Court's orders, and the Court concluded that the child's mother, half-siblings, paternal grandmother, and many relatives lived in Knoxville, and that the child should remain in Knoxville. The Court found that it was in the child's best interest to remain with Ms. Summeour, and that her mother and other relatives would have visitation. Ms. Riley appealed the decision.

A hearing date was set in Circuit Court, and the Court held the hearing on September 29, 2008, and stated the mother was present, and that she stipulated that the child was dependent and neglected due to the death of her father and the mother's inability to care for her. The Court found that custody of the child should be transferred to Ms. Riley, with certain conditions, and that the parties stipulated that several witnesses would testify that Ms. Riley was of good character and that the child enjoyed a good relationship with her. The Court stated that its decision was based upon Tenn. Code Ann. §34-2-103 (priority of persons to be considered), and Tenn. Code Ann. §36-6-106 (child custody), and that factors 1, 2, 3, 6, 9, & 10 of Tenn. Code Ann. §36-6-106 were relevant.

The Court found that Ms. Riley's plan to enroll the child in private school was impressive, and that her children, ages 17 and 13, were excelling, and both enjoyed a close relationship with the child. The Court found that Ms. Summeour was always viewed by the family as a blood relative even though she was not, and that she was a good person, a person of honor, and had Tamia's best interests at heart. The Court found that Ms. Riley was a remarkable person, having excelled at sports, having almost completed a BS degree, having consistent positive contact with the mother, and that she also had Tamia's best interests at heart. The Court found that Ms. Riley's home was excellent, but that Ms. Summeour would retain temporary custody of the child, and that if Ms. Riley accomplished certain things that she promised the Court she would do, custody would be

transferred to her and she and the child could move to Florida. A later hearing was held before the Court, and at that time the Court found that the conditions imposed had been met and the Court ordered that custody would be vested in Ms. Riley. Ms. Summeour has appealed.

A Statement of Evidence, which was approved by the Trial Judge, was filed pursuant to Tenn. R. App. P. Rule 24.

The issues on appeal are:

1.     Did the Trial Court err by relying on Tenn. Code Ann. §34-2-103 pertaining to the priority of persons to be considered for appointment as the child's guardian where guardianship was never an issue before the Court?

2.     Did the Trial Court err by failing to engage in a meaningful comparative fitness analysis?

3.     Did the Trial Court err by awarding custody of the minor child to Karen Riley where the preponderance of the evidence clearly demonstrated that an award of custody to Ms. Summerour was in the minor child's best interests?

In this case, the Trial Court determined that custody of the child should be placed with Ms. Riley, based on certain factors contained in Tenn. Code Ann. §36-6-106. Tenn. Code Ann. §36-6-106 states that the court shall consider all relevant factors including the following:

(1) The love, affection and emotional ties existing between the parents or caregivers and the child;

(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that, where there is a finding, under subdivision (a)(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a nonperpetrating parent or caregiver has relocated in order to flee the perpetrating parent, that the relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents or caregivers;

(5) The mental and physical health of the parents or caregivers;

(6) The home, school and community record of the child;

(7)(A) The reasonable preference of the child, if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that, where there are allegations that one (1) parent has committed child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected to the evidence. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and

(10) Each parent or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

The trial court found that factors 1, 2, 3, 6, 9, and 10 were relevant. Factor 1 is the love, affection and emotional ties existing between the child and the potential custodian, and the proof showed that the child had close ties with both Ms. Riley and Ms. Summeour. Factor 2 deals with the disposition of either caregiver to provide for the child's needs, and once again, both parties appeared able to provide for the child's needs. The Court placed significance and emphasis on the fact that Ms. Riley had enrolled the child in private school, but the proof was that also when living with Ms. Summeour, the child was attending a magnet school. Both parties provided for the child's basic needs of food, clothing, etc., and both saw to it that the child received counseling.

Factor 3 deals with continuity and stability, and while the child had lived with both parties for periods of time, at the time of the hearing, the child had been living with Ms. Summeour for nearly two years, so this factor would favor Ms. Summeour. Factor 4 concerns the stability of the family unit, and factor 5 deals with the mental and physical health of the potential custodians. The proof on these factors would not militate toward a finding for either party, as they would basically "weigh out" the same. Factor 6 concerns the home, school, and community record of the child, and while the Trial Court found this factor to be significant, there does not appear to be any evidence regarding this. There were no report cards or other such indicia introduced, and both

-4-

parties had a letter from a counselor who had dealt with the child and who opined that the child should remain where she was. Factor 7 deals with the child's preference, but the child did not express a preference in this case, and Factor 8 deals with abuse, and there was no proof of the same in this case. Factor 9 concerns the character of other people who live in the home, and the Court found this factor to be significant, but the only proof on this issue was that Ms. Riley's children who lived in her home were excellent students, and that her son was in the military, had a security clearance. Factor 10 deals with the potential custodian's "past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents". The proof in this regard was that both potential custodians had performed well when they had custody of the child, although the proof showed that the child probably had greater opportunities with Ms. Riley. Ms. Summeour had encouraged the child's relationship with her biological mother, as had Ms. Riley, as evidenced by her willingness to transport the mother to Florida to see the child and to provide other means of communication.

The Court found that Ms. Riley was favored in the above analysis, and the evidence does not preponderate against this finding. Tenn. R. App. P. 13(d). As this Court has previously explained with regard to custody determinations:

> Our review is *de novo* upon the record of the proceedings below. However, that record comes to us with a presumption that the trial judge's factual findings are correct. Tenn. R. App. P. 13(d). We must honor this presumption unless we find that the evidence preponderates against those findings. There is no presumption of correctness with regard to the trial court's conclusions on matters of law, or to its application of law to the facts, or to "conclusions that are based on undisputed facts".
>
> "[N]either trial nor appellate judges have any responsibility greater than to attempt to correctly adjudicate child custody disputes." "However, ... the trial judge, not the appellate court, has the opportunity to observe the witnesses. All we can review is the cold printed word and the exhibits." Therefore, a trial court has broad discretion regarding a custody determination. We will not disturb such a determination unless the record reflects an abuse of that discretion.

*Massey-Holt v. Holt*, 255 S.W.3d 603 (Tenn. Ct. App. 2007)(citations omitted).

The Trial Court found that several witnesses opined that Ms. Riley was of good character and enjoyed a good relationship with the child. The Court found that Ms. Riley's plan to enroll the child in private school was "most impressive", and that Ms. Riley's own children were excelling. The Court found that Ms. Riley was a "remarkable person", having excelled at sports and having almost completed a BS degree. The Court found that Ms. Riley had the child's best interests at heart, and was supportive of the child having consistent positive contact with her mother. Also that Ms. Riley's home conditions were excellent. The evidence does not preponderate against these

findings.[1]

As our Supreme Court has stated:

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)(citations omitted). The Court went on to explain:

Appellate courts correct errors. When no error in the trial court's ruling is evident from the record, the trial court's ruling must stand. This maxim has special significance in cases reviewed under the abuse of discretion standard. The abuse of discretion standard recognizes that the trial court is in a better position than the appellate court to make certain judgments. The abuse of discretion standard does not require a trial court to render an ideal order, even in matters involving visitation, to withstand reversal. Reversal should not result simply because the appellate court found a "better" resolution. An abuse of discretion can be found only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.

*Id*. at 88 (citations omitted).

Appellant argues the Trial Court erred in considering Tenn. Code Ann. §34-2-103 in this case, which is the statute pertaining to the priority of persons to be considered in guardianship proceedings. Appellant argues that since this statute is only supposed to be invoked as a "tie breaker" when both potential guardians are essentially equal in the best interests determination, then the Court must have felt that Ms. Riley and Ms. Summeour were equal and thus needed to use this statute to decide the issue. *See In re Horner*, 2003 WL 1452997 (Tenn. Ct. App. Mar. 21, 2003).

The Court's opinion, however, demonstrates that the Trial Court felt that Ms. Riley was the obvious choice with regard to a best interests determination. The Trial Court lauded her performance, and found her to be "remarkable", with "excellent" home conditions and parenting abilities. The Court clearly ruled that Ms. Riley was favored in the best interests analysis, and thus clearly did not find the two parties to be essentially equal nor use the priority statute as a tie breaker.

---

[1] Review in this case is somewhat limited by the fact that no transcript was provided - the statement of the evidence was approved by the court, and does not provide a basis for holding the evidence preponderates against the Trial Court's findings, or that the Trial Court abused its discretion.

While neither party asked for guardianship explicitly, it was harmless error for the Trial Court to consider the statute in its analysis, as the Trial Court properly conducted a best interests analysis and found Ms. Riley to be the clear choice. This issue is without merit.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Frankie Summeour.

_____
HERSCHEL PICKENS FRANKS, P.J.