# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
January 3, 2001 Session

## ANTHONY KEITH ELDRIDGE v. JULIA EDITH ELDRIDGE

**Appeal by Permission from the Court of Appeals
Chancery Court for Sullivan (Kingsport) County
No. 23478(L)     Richard E. Ladd, Chancellor**

---

**No. E1999-02583-SC-R11-CV - Filed May 2, 2001**

---

We granted review of this child visitation case to determine whether the trial court abused its discretion in ordering unrestricted overnight visitation with the mother. The Court of Appeals held that the trial court had abused its discretion and imposed restrictions prohibiting the presence of the mother's lesbian partner during overnight visitation. We hold that the record does not support a finding of an abuse of discretion. Accordingly, we reverse the judgment of the Court of Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed**

JANICE M. HOLDER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Michael May, Kingsport, Tennessee, for defendant-appellant, Julia Edith Eldridge.

Harold Wayne Graves, Johnson City, Tennessee, for plaintiff-appellee, Anthony Keith Eldridge.

Stephen R. Scarborough, Atlanta, Georgia, and William Allen Mynatt, Knoxville, Tennessee, for amicus curiae, Lambda Legal Defense and Education Fund, Inc.

Susan Elizabeth Mackenzie, Memphis, Tennessee, and William Allen Mynatt, Knoxville, Tennessee, for amicus curiae, Memphis National Organization for Women.

Shannon Minter, San Francisco, California, and William Allen Mynatt, Knoxville, Tennessee, for amicus curiae, National Center for Lesbian Rights.

William Allen Mynatt, Knoxville, Tennessee, for amicus curiae, Tennessee National Organization for Women.

Abby Rose Rubenfeld, Nashville, Tennessee, and Bruce S. Kramer, Memphis, Tennessee, for amicus curiae, The American Civil Liberties Union of Tennessee.

**OPINION**

BACKGROUND

Anthony and Julia Eldridge were divorced in 1992. The couple agreed to joint custody of their minor daughters, Andrea and Taylor, who were ages eight and nine respectively. Two years later, a dispute arose regarding Ms. Eldridge's visitation rights. Ms. Eldridge, who is engaged in a live-in homosexual relationship with Lisa Franklin, moved the court to establish a visitation schedule. In response, Mr. Eldridge moved for sole custody of the children.

In July 1995, the Court awarded sole custody of the children to Mr. Eldridge. The court also appointed a Special Master, Dr. James Granger, Head of the East Tennessee University Division of Child and Adolescent Psychiatry, to counsel the parties and their children and make recommendations to the court regarding visitation. Dr. Granger's written final report and testimony reflected that counseling was unsuccessful. An agreement as to visitation was not reached.

Upon Mr. Eldridge's motion, the trial court appointed a guardian ad litem ("GAL") for both children. The GAL concluded that regular visitation with the mother was essential and recommended regular visitation with standard visitation every other weekend. The first few weekend visitations were recommended to be limited to Saturday morning through Sunday evening and eventually to be extended to Friday through Sunday.

In September 1996, the trial court ordered overnight visitation with Taylor[1] every other Saturday night through Sunday. Eight months later, Ms. Eldridge moved the court to extend Taylor's overnight visitation to include Friday nights, holidays and summer vacation. Ms. Eldridge also moved that another Special Master be appointed. Mr. Eldridge opposed expanding Ms. Eldridge's visitation rights.

In September 1997, the trial court approved an agreement reached by the parties. The agreement provided for a visitation schedule and appointment of Dr. Judy Millington, a counselor at Church Circle Counseling Center, as Special Master. The court's order provided that Dr. Millington's written recommendations were to take effect immediately without further order of the court. Dr. Millington recommended to the court that Ms. Eldridge's overnight visitation be expanded. Various disputes regarding visitation continued.

A hearing was held in October 1998 to resolve the visitation issue. In November 1998, the trial court entered an order adopting Dr. Millington's recommendations and permitting Ms. Eldridge unrestricted overnight visitation with Taylor. The Court of Appeals reversed, finding that the trial

---

[1]No error is alleged as to the trial court's ordered visitation between Andrea and Ms. Eldridge. Accordingly, this Court's comments shall be limited to visitation with Taylor.

court abused its discretion in failing to prohibit Taylor's overnight visitation with Ms. Eldridge while Ms. Franklin was present in the home. One judge dissented. We granted review.

## ANALYSIS

The Court of Appeals correctly held that the standard for appellate review of a trial court's child visitation order is controlled by our decision in Suttles v. Suttles, 748 S.W.2d 427, 429 (Tenn. 1988). There, we noted that "'the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge.'" Id. at 429 (quoting Edwards v. Edwards, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). Accordingly, we held that a "trial court's decision [on visitation] will not ordinarily be reversed absent some abuse of that discretion." Id.

In reviewing the trial court's visitation order for an abuse of discretion, the child's welfare is given "paramount consideration," id. (quoting Luke v. Luke, 651 S.W.2d 219, 221 (Tenn. 1983)), and "the right of the noncustodial parent to reasonable visitation is clearly favored." Id. Nevertheless, the noncustodial parent's visitation "may be limited, or eliminated, if there is definite evidence that to permit . . . the right would jeopardize the child, in either a physical or moral sense." Id. (quoting Weaver v. Weaver, 261 S.W.2d 145, 148 (Tenn. Ct. App. 1953)).

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." State v. Scott, 33 S.W.3d 746, 752 (Tenn. 2000); State v. Gilliland, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. Myint v. Allstate Ins. Co., 970 S.W.2d 920, 927 (Tenn. 1998).

Mr. Eldridge challenges the trial court's visitation order on grounds that Ms. Franklin should not be present during Taylor's overnight visitation with Ms. Eldridge. The Court of Appeals held that "the trial court abused its discretion by not prohibiting Ms. Franklin's presence during the court-ordered overnight visitation." To cure this abuse of discretion, it modified the trial court's visitation order by prohibiting Lisa Franklin's presence during Taylor's overnight visitation with her mother.

The Court of Appeals' opinion makes clear that the court did "not rely on the fact that Ms. Eldridge is a lesbian" in modifying the trial court's order. The court fails to state, however, what it did rely upon. The Court of Appeals did not identify any legal or factual error by the trial court that might constitute an abuse of discretion. It also failed to establish how the ordered modification would cure the trial court's supposed error. Cf. Suttles, 748 S.W.2d at 429 (describing multiple facts justifying reversal of visitation as ordered by the trial court). The court offered that "[t]he courts of Tennessee commonly place reasonable restrictions on the visitation rights of heterosexual parents who engage in sexual activity with partners with whom they are not married." Mere observation that

restrictions have been imposed in past cases does nothing, however, to reveal why the trial court in this case abused its discretion in permitting unrestricted overnight visitation.

The Court of Appeals cited Dailey v. Dailey, 635 S.W.2d 391 (Tenn. Ct. App. 1982), as having "addressed the issue raised by Mr. Eldridge." In Dailey, the Court of Appeals upheld the trial court's decision to modify a custody order to shift custody from the mother, a homosexual, to the father. The court also, sua sponte, modified the trial court's visitation order to prohibit the visitation in the home where the mother lived with her lesbian partner or from having the child in the presence of any lesbian partner. Id. at 395-96.

The Court of Appeals justified modification of the visitation order in Dailey on grounds that the child should not be "subjected to the type of sexually related behavior that has been carried on in his presence in the past under the proof in this record." Id. at 396. The proof in Dailey showed that the mother

> flagrantly flaunted her relationship with [her live-in lesbian partner] in the presence of the minor child. They would hug and passionately kiss each other and rub the private parts of their bodies while in the home where the child was. They would go to bed together and during their sexual stimulation of each other make audible expressions of pleasure and satisfaction that could be heard throughout the house and in the area where the child slept. They would have the child in bed with them while they were embracing each other in the nude. The child was five years of age at the time of the trial of this case. He suffers from cerebral palsy and is somewhat handicapped physically and is mentally slow.

Id. at 393.

The record in Dailey established that the noncustodial parent engaged in overt, lascivious, sexual conduct in the presence of her five-year-old, mentally and physically handicapped child. Certainly, this is the type of "definite evidence" that unrestricted visitation "would jeopardize the child, in either a physical or moral sense" that might constitute a finding of an abuse of discretion under Suttles. 748 S.W.2d at 429.

The Court of Appeals in this case held that "[t]he facts of this case do not rise to the level of harmful behavior displayed by the mother in Dailey." This statement indicates either: (1) that the court held Dailey to be inapplicable; or (2) that the court found at least some conduct by Ms. Eldridge similar to that in Dailey. The court's recitation of the facts shows no conduct by Ms. Eldridge that might arguably be construed as similar to that of the mother in Dailey, and our independent review of the record reveals none. The only similarity between this case and Dailey is that the mother is homosexual. As the Court of Appeals affirmatively stated that it did not rely on Ms. Eldridge's homosexuality in modifying the trial court's order, we can only infer that the Court of Appeals found Dailey to be completely irrelevant to this case. We agree.

The Court of Appeals' failure to state a basis for its decision leaves us little insight as to what facts in the record show the trial court abused its discretion. Our own review of the record shows that Ms. Eldridge and Ms. Franklin offered substantial testimony regarding their relationship and living arrangement. At the time of the hearing, they had been together for nearly five years. They live in the same home but had slept in separate bedrooms for three months prior to the hearing. Ms. Franklin provides all the financial support for the home. Ms. Eldridge is not a lessor of the home. They have a monogamous relationship but have not been sexually intimate in over a year. Ms. Franklin characterized them as "best friends, roommates." They make no expression of "physical emotion or physical contact" when Taylor is in the home. Taylor has her own bedroom in the home. Ms. Franklin testified that she had a good relationship with Taylor.

Mr. Eldridge and his wife, Chantal Eldridge, testified that unrestricted overnight visitation has a deleterious effect on Taylor. Mr. Eldridge testified that allowing Ms. Franklin to be present during overnight visitation would set a bad example for Taylor. He tries to teach Taylor to live by the Bible and that unmarried persons should not cohabit.[2] He also testified that Taylor, based on her own sense of morality, believed that homosexuality and extramarital relationships were wrong. He testified that Taylor does not want Ms. Franklin present during visitation and that Taylor has many questions about Ms. Eldridge's and Ms. Franklin's relationship. Mr. Eldridge did not believe that Taylor would be physically harmed during overnight visitation. He was, however, concerned about her emotional well-being.

Chantal Eldridge testified that Taylor is visibly upset before leaving to spend the night with her mother. She was unsure what produced Taylor's response but opined that Taylor might miss her, Mr. Eldridge, and their children. Ms. Eldridge, however, testified that Taylor refuses to come into her house only until Taylor is certain her father has left. Then, Taylor enters the home and is very comfortable, eating and playing normally. As the time to return to her father approaches, however, Taylor paces, cries, and worries. Taylor makes efforts to hide the fact that she has eaten or enjoyed herself at Ms. Eldridge's home. Larry Davis, Ms. Eldridge's brother-in-law, offered testimony that supported this contention. He stated that during one of his family's visits with Ms. Eldridge, Taylor was playing outside with him and his children and acting normally. In the last hour before Mr. Eldridge came to pick her up, however, Taylor became withdrawn, refused to come outside, and would not associate with anyone in the home.

Dr. Millington testified that Taylor wants to love and please both of her parents. This conflict causes Taylor to lie to her father about having fun while visiting with her mother. Dr. Millington had observed no adverse or detrimental effects on Taylor resulting from overnight visitation with Ms. Eldridge in Ms. Franklin's presence. Dr. Millington stated, however, that Taylor has admitted to being somewhat uncomfortable during overnight visitation in Ms. Franklin's

---

[2]Mr. Eldridge admitted under questioning that he and Chantal cohabited with the children for several months while unwed. That living arrangement, he admitted, also set a bad example for Taylor. He stated that he would not, however, make that same decision again.

presence. Dr. Millington observed that Taylor's behavior around Ms. Eldridge was very positive and opined that increased visitation would further encourage their relationship.

In her June 30, 1997 report, Dr. Millington suggested that Taylor's overnight visitation every other weekend should be extended from one night to two. Dr. Millington expressed in an addendum to her report that

> [i]nteraction with Lisa appears (from videotapes viewed) to have no deleterious effects on Taylor at present. Does seeing Lisa and Julie together make a difference for the children for the future? . . . Although Taylor most likely will have difficulty with her mother's orientation in the future, I don't know whether it will make a difference having had Lisa there versus not there. Taylor seems comfortable with Lisa now.

In that same document, Dr. Millington opined that "on the continuum the best for Taylor . . . would be to have visitation without Lisa present, because the sexual orientation and modeling behavior issues become less obvious and so less of an issue parent-to-child in the future than it otherwise might be."

In her deposition of June 30, 1997, Dr. Millington stated that although overnight visits generally might be stressful for a child, she was not sure that Ms. Franklin was the source of Taylor's stress. Upon question about what would be the "ideal situation" regarding visitation, she testified that "the very best situation, which would probably be for the girls to see [Ms. Eldridge] just completely by herself, but I don't know how practical that is." At the October 1998 hearing, Dr. Millington ultimately was noncommittal on the issue of overnight visits:

> And I think I stated earlier that for [Taylor's] best interest overnight would not be required, but on the other hand that I didn't really think overnight would harm her because I don't think she's going to see anything at [Ms. Eldridge's home]. So I guess I'm kind of leaving that one up to Your Honor as to whether that it ought to be the overnight or not [sic], but that my feeling is that time has to happen and hasn't happened.

The trial court evaluated and resolved this competing testimony and held that overnight visitation without restriction was appropriate. Mr. Eldridge claims on appeal that prohibiting overnight visitation while Ms. Franklin is present is a reasonable way to resolve his concerns and would constitute a minimal inconvenience to Ms. Eldridge. His argument, however, is one to be made in the trial court, not on appeal.

It is not the function of appellate courts to tweak a visitation order in the hopes of achieving a more reasonable result than the trial court. Appellate courts correct errors. When no error in the trial court's ruling is evident from the record, the trial court's ruling must stand. This maxim has special significance in cases reviewed under the abuse of discretion standard. The abuse of

discretion standard recognizes that the trial court is in a better position than the appellate court to make certain judgments. The abuse of discretion standard does not require a trial court to render an ideal order, even in matters involving visitation, to withstand reversal. Reversal should not result simply because the appellate court found a "better" resolution. See State v. Franklin, 714 S.W.2d 252, 258 (Tenn. 1986) ("appellate court should not redetermine in retrospect and on a cold record how the case could have been better tried"); cf. State v. Pappas, 754 S.W.2d 620, 625 (Tenn. Crim. App. 1987) (affirming trial court's ruling under abuse of discretion standard while noting that action contrary to action taken by the trial court was the better practice); Bradford v. Bradford, 364 S.W.2d 509, 512-13 (Tenn. Ct. App. 1962) (same). An abuse of discretion can be found only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record. See, e.g., State ex. rel Vaughn v. Kaatrude, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

The Court of Appeals cited Edwards v. Edwards, 501 S.W.2d 283 (Tenn. Ct. App. 1973), for the contention that Tennessee courts commonly place reasonable restrictions on the presence of unmarried partners, whether heterosexual or homosexual, during overnight visitation. In Edwards, however, the trial court imposed restrictions on the mother's visitation. On appeal, the Court of Appeals observed that the trial court's restrictions "superficially appear[ed] rather severe." Id. at 291. Still, the appellate court gave appropriate deference to the trial court, found a reasonable basis in the record for the trial court's ostensibly severe ruling, and affirmed the restrictions on visitation. Id. Appellate courts in other jurisdictions have, in a similar fashion, upheld trial court orders prohibiting overnight visitation with a parent in the presence of a non-spouse.[3]

As a general proposition, we agree that in an appropriate case a trial court may impose restrictions on a child's overnight visitation in the presence of non-spouses. The procedural posture of the case at bar is markedly different. In this case, the appellate court, in spite of the deference to which the trial court is entitled, has displaced the trial court's ruling and imposed a restriction that was considered and rejected by the trial court. Justification for that action must be found in the record and, preferably, be developed in the appellate court's opinion. We find no justification in this record.

There was testimony that Taylor might suffer some deleterious effects from Ms. Franklin's presence during overnight visitation. Still, ample evidence to the contrary was presented orally at the hearing and in writings found in the record. The trial court was in a far better position than the appellate court to resolve this competing evidence. See, e.g., Nance v. State Indus., Inc., 33 S.W.3d 222, 229 (Tenn. 2000); Jones v. Hartford Accident & Indem. Co., 811 S.W.2d 516, 521 (Tenn. 1991) ("where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to

---

[3]See Hansen v. Hansen, 650 So. 2d 917 (Ala. Civ. App. 1994); Gallo v. Gallo, 440 A.2d 782 (Conn. 1981); LeBlanc v. LeBlanc, 490 So. 2d 763 (La. Ct. App. 1986); Duplantis v. Monteaux, 412 So. 2d 215 (La. Ct. App. 1982); Robison v. Robison, 722 So. 2d 601 (Miss. 1998); DeVita v. DeVita, 366 A.2d 1350 (N.J. Super. Ct. App. Div. 1976); Dilworth v. Dilworth, 685 N.E.2d 847 (Ohio Ct. App. 1996); Somers v. Somers, 474 A.2d 630 (Pa. Super. 1984); Carrico v. Blevins, 402 S.E.2d 235 (Va. Ct. App. 1991); Palmer v. Palmer, 416 A.2d 143 (Vt. 1980).

those circumstances"). We cannot find that the trial court's ruling was not among the reasonable alternatives supported by the proof in this case.

We may, however, find an abuse of discretion when the record contains definite evidence that visitation, as ordered, would jeopardize the child in a physical or moral sense. Suttles, 748 S.W.2d at 429. We have carefully scrutinized the entire record for any evidence that Taylor has been, or would be, subject to physical or emotional harm from overnight stays with her mother while Ms. Franklin was present in the home and have found none.

Further, there is no definite evidence in this record that Taylor's moral well-being would be jeopardized if visitation were implemented as ordered by the trial court. There is conclusive evidence in this case of a moral dilemma between the parents. Dr. Millington characterized the parents in this case as "quite polarized in their beliefs, two apparently reasonable people doing the best that they can with their own belief systems." A finding of harm to Taylor's sense of morality, however, does not necessarily follow from her parents' moral dilemma.

Although Dr. Millington opined that overnight visitation in general was not required to promote Taylor's best interests, she never indicated that overnight visitation in Ms. Franklin's presence was contrary to Taylor's best interests. The evidence shows that Ms. Eldridge and Ms. Franklin conduct themselves appropriately in Taylor's presence, as do Mr. Eldridge and Chantal Eldridge. Dr. Millington opined that there was no risk that either parent would engage in sexual conduct in the child's presence. The trial court, in adopting Dr. Millington's recommendations from her report of October 6, 1998, ordered that Ms. Eldridge and Ms. Franklin not share a bedroom during Taylor's overnight visitation. There is no evidence of noncompliance with that order.

The record does not show that Taylor is in moral crisis because of Ms. Franklin's presence during overnight visitation. At most, it appears that Taylor, like many children of divorce, is caught in the crossfire of parental acrimony. It is argued as a general proposition of morality that a parent's unwed love interest should not be present during overnight visitation with the child. A trial court's acceptance of that proposition, taking into account all the facts and circumstances, may give rise to a reasonable conclusion that overnight visitation should be restricted. Nevertheless, that proposition does not in all cases foreclose the possibility of the trial court reaching a reasonable alternative conclusion. In the absence of any evidence of harm beyond the mere unsubstantiated predictions of a vying parent, the trial court's ruling in this case cannot be said to be unreasonable. The evidence adduced in this case supports a reasonable conclusion that unrestricted overnight visitation was in Taylor's best interests. Accordingly, on this record, there was no abuse of discretion by the trial court.

CONCLUSION

We hold that the trial court did not abuse its discretion in ordering unrestricted overnight visitation by Taylor Eldridge with Julia Eldridge. The judgment of the Court of Appeals is reversed.

Costs of this appeal are taxed to Appellee, Anthony Eldridge, for which execution may issue if necessary.

 

 

 

 

                                         _____

                                         JANICE M. HOLDER, JUSTICE