# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 8, 2003 Session

## BRENDA C. KING v. DANNY F. KING

**Appeal from the Circuit Court for Davidson County**
**No. 97D-2861     Marietta M. Shipley, Judge**

---

**No. M2002-01897-COA-R3-CV - Filed September 16, 2003**

---

Former Husband sought to accelerate former Wife's repayment of alimony overpayments that accrued between the divorce and this court's modification of the original award of alimony. Former Husband argues the trial court abused its discretion when it did not establish a reasonable repayment plan. Because we find the trial court did not abuse its discretion in fashioning a repayment plan, we affirm the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., J., and WILLIAM B. CAIN, J., joined.

Robert L. Jackson, Stanley A. Kweller, Nashville, Tennessee, for the appellant, Danny F. King.

Paul T. Housch, Nashville, Tennessee, for the appellee, Brenda C. King.

# MEMORANDUM OPINION[1]

The trial court granted Ms. King a divorce based on Dr. King's inappropriate marital conduct and adultery.[2]  Dr. King was ordered to pay his former wife $6,000 per month in alimony *in futuro* for the first two years and then $4,500 per month thereafter.  The trial court further ordered Dr. King to pay $10,000 of the wife's attorney's fees.  Dr. King appealed the award, and another panel of this court in *King v. King*, No.M1999-02335-COA-R3-CB, 2001 WL 950194 (Tenn. Ct. App. Aug. 22, 2001) (no Tenn. R. App. P 11 application filed) reduced the award of alimony *in futuro* to $4,500 per month for the first two years, and $3,000 per month thereafter, terminating upon the wife's remarriage or upon the death of either, whichever occurs first.

On November 15, 2001, Dr. King filed a "Motion for Relief Pursuant to the Court of Appeals" seeking either a refund, rebate, or credit for his overpayment of alimony of $1,500 per month for 28 months or $42,000, for the period in which he paid his former wife alimony in excess of that affirmed on appeal.

Ms. King opposed the motion and argued that reduction of her former husband's alimony *in futuro* obligation should not be made retroactive to the date of the final divorce decree on June 10, 1999, but rather be effective on the date of the Court of Appeal's decision of August 22, 2001.  Moreover, Ms. King argued that any overpayment of alimony should be offset by the sum Dr. King owed to Ms. King's attorney.

On February 7, 2002, following a hearing on the motion, the trial court awarded Dr. King a $42,000.00 judgment against his former wife for the overpayments made to her and outlined the schedule for credits and repayments as follows:

> 2.)  That a credit against said overpayment shall be made as follows: $10,000.00 representing attorney's fee required to be paid by Dr. King shall be deducted from said overpayment, plus statutory interest of 10% per annum from the date of the original Order until January 11, 2002 for a total of $12,591.89.  After deducting said sum, the amount of overpayment as of January 1, 2002, is $29,408.11.

---

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]The parties had been married for 31 years. Husband is a veterinarian who owns a clinic. Wife worked off and on at the clinic for no salary.  Wife is currently unemployed.  Wife and Husband were 51 and 53 years old at time of the divorce.

3.) Dr. King shall be entitled to deduct from his 3,000.00 per month alimony payment the sum of $250.00 per month to be applied towards the said overpayment of $29,408.11 and shall also be entitled to the statutory interest rate of 10% per annum on the balance of the judgment until the total amount of the same is paid.

*****

5.) The $250.00 per month credit referenced above shall end upon Mrs. King's death or remarriage, at which time she or her Estate shall be required to pay $1,500.00 per month to Dr. King for any balance that may exist at that time, including interest.[3]

Not satisfied with the modified order, Dr. King filed a timely Tenn. R. Civ. P. 59.04 Motion to Alter or Amend the February 7th order "as it relates to the amount of money that the Plaintiff, Brenda King, is required to pay Defendant for the judgment awarded against her. . . ." The Rule 59 hearing was held on June 21, 2002.[4] Dr. King urged a "modest" increase of $150 per month which would increase his monthly repayment credit to $400.00.

Ms. King argued that even a $150 increase was a lot of money to her given the fact that her only income was the alimony payment of $2,750 per month which was substantially smaller than the original award. Counsel for Ms. King explained that she was in the process of rebuilding her home which had been destroyed by a fire and that dealing with that was a full-time job. Once rebuilt, Ms. King planned to refinance the home and free up more disposable income to accelerate payment of the judgment. Ms. King also planned to seek employment then. The trial court advised Ms. King that she should try to repay the judgment as soon as possible due to the high interest rate (10%) she was paying on the balance.

Weighing all these factors, the trial court found the requested increase of an additional $150 to be too much for Ms. King to handle at the present time. Nonetheless, the trial court entered an order modifying its February 7th order to reflect its concern that Dr. King be re-payed in a reasonable manner:

(1). That the parties have agreed that the judgment previously entered by the Court on February 7, 2002, should be modified and that the total amount of the judgment owed by Ms. King to Danny King should be reduced from $42,000.00 to $39,000.00. After

_____

[3]We assume the $1500 payment would be effective only upon Ms. King's remarriage since Mr. King would have a claim against her estate for the entire balance of the judgment in the event of her death.

[4]We have reviewed the CD-ROM of the Motion to Alter or Amend, and commend the trial court's efforts toward creating a compromise that would repay Dr. King within a reasonable time period, while at the same time not unduly burden Ms. King.

subtracting the $10,000 attorney fee awarded to Ms. King's former attorney along with interest thereto, Wife, Ms. King, owes Husband, Danny King, the total sum of $26,408.11.

(2). The Court is further of the opinion that the sum should be repaid by Wife, Ms. King, to Husband, Danny King, at the rate of $250.00 per month, and that such payment should increase in the event of Ms. King's death or remarriage to a total of $1500.00 per month.

(3). The Court further modifies the previously entered judgment to require that Ms. King pay off the entire balance of the debt created as a result of the previous Order and this Order within ten years from the date of the this Order, including all amounts of principal and interest then owing. Ms. King is free to pay off the balance of this debt at any time before the end of that ten year period.

We review the trial court's decision on the Rule 59 motion to alter or amend the judgment under an abuse of discretion standard. *Federated Ins. Co. v. Lethcoe,* 18 S.W.3d 621, 624 (Tenn.2000); *Underwood v. Zurich Ins. Co.,* 854 S .W.2d 94, 97 (Tenn.1993); *Bradley v. McCleod,* 984 S.W.2d 929, 933 (Tenn. Ct. App.1998), *overruled on other grounds in part by Harris v. Chern,* 33 S.W.3d 741, 744 (Tenn.2000); *Randalls v. Hopp*, No. M2002-00771-COA-R3CV, 2003 WL 1923821 (Tenn. Ct. App. April 24, 2003) (no Tenn. R. App. P. 11 application filed).

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn.2001).

Here, Dr. King argues that the trial court abused its discretion by not requiring faster repayment of the judgment. On appeal, Dr. King suggests that repayment of the debt within a five year period would be reasonable. This could be accomplished by allowing Dr. King to deduct $561.09 per month from his alimony payment.[5] At that rate, Ms. King would still be receiving $2400 per month in alimony in addition to whatever earnings she is able to generate.[6]

---

[5]This request for a 5 year payoff was not made before the trial court at the Rule 59 hearing. At the hearing, Dr. King asked the trial court for only an increase which would have set the rate of repayment at $400.00 per month. At the close of the hearing, it does not appear that any amortization tables he had prepared were introduced into evidence..

[6]At trial, the court found that Ms. King had the potential earning capacity of $25,000.00.

4

At the hearing to address Dr. King's Rule 59 Motion, the trial court considered any increase in the repayment credit as a detriment to Ms. King getting back on her feet following the house fire she suffered. Nonetheless, the trial court imposed a reasonable time limit of ten years in which to pay the judgment. The trial court opined that she hoped Ms. King would repay the debt sooner due to the 10 % interest rate being charged. The trial court noted that Dr. King was getting a better return on his money at 10% from Ms. King than he could from market at the present time.

In addition, the trial court noted that Ms. King was making a substantial payment toward Dr. King's judgment by virtue of the trial court's offsetting Dr. King's obligation to pay Ms. King's attorney's fee of $12,591.89 . We agree that this was a substantial down payment on the judgment and one more drain on Ms. King's recently diminished resources.

Our Supreme Court held in *Harrington v. Harrington*, 759 S.W.2d 664 (Tenn. 1988) that although there is no statutory minimum amount to be fixed by the trial court when allowing payments to be paid by installments, the trial court should nonetheless require the repayment of the debt be reasonable and not "patently low." *Id.* at 668; *see* Tenn. Code Ann. § 26-2-216. Here, the trial court carefully considered the parties respective abilities to pay and crafted a reasonable re-payment plan to satisfy the judgment. Based upon the record before us, we can find no abuse of discretion by the trial court.[7]

## CONCLUSION

The trial court did not abuse its discretion in structuring the repayment plan and, therefore, the judgment of the trial court is affirmed and this matter is remanded for any further proceedings which may be necessary. The costs of the appeal are taxed to the appellant, Danny F. King.

_____
PATRICIA J. COTTRELL, JUDGE

---

[7]At oral argument before this court, Dr. King conceded that his concerns about complete repayment would be somewhat allayed by a judgment lien on Ms. King's home. A request for such lien should be addressed to the trial court.