# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 23, 2010 Session

## JOE ALLEN PENNINGTON, v. SONYA RENE PENNINGTON

**Appeal from the Circuit Court for Davidson County**
**No. 04D-192      Hon. Carol Soloman, Judge**

---

**No. M2009-01941-COA-R3-CV - Filed May 4, 2010**

---

This is the second appeal from the Trial Court's altering the custodial arrangement of the parties' minor child. In the first trial, the Trial Court excluded testimony of the child's stepfather, on the grounds that the mother had not properly noticed the Court and party that the stepfather was a witness. On the first appeal, this Court remanded this case to the Trial Court and directed that the stepfather's testimony be allowed. On remand, the stepfather testified at length, but it was revealed during his examination that he had read the entire evidentiary transcript of the first trial. The Trial Court then ruled that the stepfather's testimony should be stricken, but went ahead and considered his testimony and essentially determined that his testimony did not alter the weight of the evidence as found in the first trial, and affirmed the Court's original award of granting custody to the father. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which ANDY D. BENNETT, J., and JOHN W. MCCLARTY, J., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Sonya Rene Taylor.

Mary C. LaGrone, Nashville, Tennessee, for the appellee, Joe Allen Pennington.

## OPINION

This is the second time this divorce action has been appealed to this Court over a custody dispute between the parties involving their minor child.

Prior to the first appeal, the Trial Court found that joint custody did not work for the parties and they did not communicate, and thus that a material change of circumstances had occurred. The Court found the father was by far the best custodian of the two parents, and that he showed a truer concern for the child, had provided better activities for the child, and was getting his temper under control with therapy. The Court found that the child demonstrated behavior that he didn't want to return to the mother's home, that the mother had programmed the child to say that the stepfather didn't live there, even after they were married, and that the mother would call excessively when the child was with the father. The Court found the father was a very credible witness as was the child's counselor, Carlin Jyles. The Court enjoined the mother from leaving the child alone with the stepfather or allowing the stepfather to physically discipline the child.

The mother appealed the Trial Court's ruling, and this Court issued an opinion stating that the mother's witnesses were excluded from the trial because her attorney failed to comply with a local rule regarding witness lists. We found that the Trial Court should not have excluded the stepfather's testimony, because this produced an overly harsh result. We stated that the stepfather's testimony was important and could have affected the outcome of the case, and thus remanded the case to the Trial Court for a further hearing.

After the remand, a hearing was held wherein Mr. Taylor testified, and he stated that he and the mother married on May 20, 2006, and they had a child together who would be two in June 2009. He testified that he worked for Nationwide Insurance, and was a property adjuster. He testified that he realized he had a problem with alcohol in 2001, after being arrested for DUI twice in a two month period, and that he failed a drug test during his probation, and tested positive for cocaine. Taylor testified that he was incarcerated for a short period, and then after he got out he resumed drinking. He then realized that he did not like where his life was going, so he called his parents and asked for their help, and they helped him check into rehab. He testified that he did an intensive 30 day inpatient program, and attended aftercare for a year, and AA for over two years, and had not had a drink since January 29, 2003.

Taylor testified that he had a great relationship with the child, and that he had never touched him inappropriately nor hurt him in any way. Taylor testified that he and the mother

had discussed discipline before they ever married, and that he told her he didn't think it was his place as stepfather to physically punish the child, and the mother agreed. He testified that he first met the father on May 6, 2006, at the child's soccer game, and the father came over to them, and the mother stepped between them, and the father said "I want to speak to your little friend." Taylor testified the father yelled at him and told him that if he ever touched his son again he would kill him. Taylor testified that he told the father he had never touched the child, and the father again yelled at him and told him he if he touched his son he was going to take his f—ing head off. Taylor testified that he told the father he was making a fool of himself, at which point the father became more angry and poked him in the shoulder, again saying he was going to take his f—ing head off.

Taylor testified that he was out of town from January 2, 2006 until January 10, 2006, and that he left town again on January 13, 2006. He testified that he saw the child on the 11th and 12th, and did not notice any black eye. He testified that he did not return to town until January 29, 2006, and that he saw the child on February 11 and 12, 2006. Further, that he saw the child on February 26, 2006, and that was the closest time he saw him to March 4. Taylor corroborated the mother's account of how the child got the bruise/goose egg on his head. He said the child and another boy were running around some cinder blocks where a house was being built, and the child hit his head on a block. Taylor denied ever having any vicious animals, and stated that he only had a Beagle and a Jack Russell Terrier.

On cross-examination, Taylor admitted that he and the mother had a cash bar at their wedding, and that he and the mother had an affair before her divorce. Taylor admitted that he read all the transcripts of the prior hearings and went over all the testimony with his attorney before testifying.

The Trial Court issued an Order following this hearing, and found that Mr. Taylor had reviewed the prior transcripts extensively, and that his testimony should have been stricken pursuant to Tenn. R. Evid. 615. The Court went ahead and considered his testimony, however, noting that Taylor denied all allegations of abuse and denied seeing any marks or bruises on the child (which the Court apparently did not believe). The Court noted that Taylor also admitted a history of drug/alcohol abuse, as well as more than one arrest, and a probation violation. The Court found that after considering the stepfather's testimony, it did not change any of the Court's prior findings, nor the Court's ultimate decision regarding custody.

The mother has appealed, raising these issues:

1.      Did the Trial Court abuse its discretion in striking the testimony of Mr. Taylor for violation of Tenn. R. Evid. 615?

2.  Did the evidence preponderate against the Trial Court's finding that Mr. Taylor abused the child?

3.  Did the Trial Court abuse its discretion in awarding custody to the father?

The mother argues that the Trial Court erred in striking the testimony of Mr. Taylor because he had reviewed the transcripts of the prior hearings. While the Court did say that his testimony should be stricken, the Court clearly went ahead and considered Taylor's testimony anyway when reconsidering the Court's ruling on custody. The Trial Court made factual findings with regard to Taylor's testimony and ruled that it did not change the Court's ultimate decision regarding custody.

We conclude that Taylor's testimony was properly considered and was not stricken from the record. This issue is without merit.

Next, the mother argues that the evidence preponderates against the Trial Court's finding that Taylor abused the child. The mother argues that the finding of abuse by Taylor was the Trial Court's primary basis for finding a change of circumstance and changing custody. The Trial Court's numerous findings, however, demonstrate that this abuse was only a part of the Trial Court's basis for finding a change of circumstance and changing custody.

Regarding the finding that abuse by Taylor occurred, however, that finding comes to us with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13. The evidence in this case showed that the father and others noticed injuries to the child that occurred while the child was in the mother's custody. The child reported to at least five different people, two of whom were unrelated to the parties, that Mr. Taylor inflicted some of the injuries and/or that Mr. Taylor hit him. While it is true that the child added other fantastical details on to his story given to the counselor after the counselor prompted him for more information, this does not change the fact that he consistently reported to several people that Mr. Taylor had hurt him.

The mother relies in her argument on the fact that the counselor could not state for certain whether abuse had occurred, and stated that she needed to spend more time with the child to be able to tell. She also testified that he understood different types of touches, and he volunteered to her that Mr. Taylor hit him and then did not want to talk about it further, and he also understood the difference between the truth and a lie.

The counselor was obviously concerned enough about the report that she felt obligated to report it to DCS to investigate. The child also reported that Taylor hit him in response to

a question about an injury from a completely unrelated witness, and further reported it to his father, stepmother, and grandfather, all of whom saw bruising, black eyes, and a "goose egg" on his head, which they felt was abnormal for a child his age to have sustained such injuries while playing. The evidence does not preponderate against the Trial Court's finding, and this issue is also without merit.

Finally, the mother argues that the Trial Court erred in awarding custody to the father. The mother first makes the argument that the Trial Court erred in finding that a material change of circumstances had occurred, but then relies on the existence of a material change of circumstances to argue that her petition for custody should have been granted. Thus, she concedes that a substantial and material change did occur, but only takes issue with the Trial Court's ultimate decision regarding custody.

The Trial Court conducted a comparative fitness analysis and determined the father was "by far" the better of these two parents. Custody determinations are reviewed under an abuse of discretion standard (*see, e.g.*, *Herrera v. Herrera*, 944 S.W.2d 379 (Tenn. Ct. App. 1996)), and the trial court's decision should thus be upheld so long as "reasonable minds can disagree as to propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82 (Tenn. 2001).

The factors to be considered in making a custody decision are enumerated in Tenn. Code Ann. §36-6-306.

In this case, it appears that both parents have love, affection, and emotional ties with the child, and both are able to provide for the child's needs. The child split his time equally between the parents' homes prior to the original trial, so continuity was not an issue. Both parents seemed to have stable family units, and the mental and physical health of the parents was not an issue. The child had just started kindergarten at the time of trial while in the custody of the father, and the father testified that he loved school and was doing well.

Regarding abuse to the child, the Trial Court found there was physical abuse to the child by Taylor, and the evidence does not preponderate against that finding. The Trial Court also found the mother had emotionally abused the child by "coaching" him regarding what he could or should tell about Taylor, by tape recording him. These findings were based on the testimony of the father and his wife, as well as the counselor, who related a particularly troubling incident in which she asked the child something about Taylor, and he had to leave the room and go ask his mother's permission before feeling he could say anything about Taylor. The counselor also testified that the child told her spontaneously that "daddy lies" and "daddy told a fib", but then could not explain what a fib was. The mother denied part of these allegations, but the Trial Court found that she was not credible or truthful in her

testimony.

Thus, factor 8 weighs heavily in the father's favor in finding abuse. Factor 9 also weighs in the father's favor, as it was shown that Taylor had a prior history of drug/alcohol abuse and incarceration, in addition to the abuse shown. Further, factor 10 weighs in the father's favor as it was shown that he and his then wife encouraged a close and continuing relationship between the child and the mother, but the mother did not return the favor, and instead coached the child to say things like "daddy told a fib", and other coaches. Considering all of the above factors, the evidence supports the Trial Court's custody determination in this case.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Sonya Taylor.

_____
HERSCHEL PICKENS FRANKS, P.J.