IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 3, 2011 Session

## SUSAN LYNN (MERY) STANSBERRY, v. MICHAEL JAMES MERY

**Appeal from the Chancery Court for Hamblen County**
**No. 2000-509     Hon. Thomas R. Frierson, II., Chancellor**

### No. E2010-01440-COA-R3-CV-FILED-JUNE 20, 2011

In the parties' divorce in 2000, they agreed to a joint custody arrangement of their two minor children.  This action was triggered in 2008 when the father advised the mother he intended to move to North Carolina and take the children with him.  In the action brought by the mother, she asked to be designated the primary caregiver and custody of the children to remain in Hamblen County.  Following a protracted evidentiary hearing, the Trial Court denied the father's request to give him custody and take the children to North Carolina, but awarded custody of the children to the mother with visitation to the father.  The father has appealed, and we affirm the Judgment of the Trial Court and remand.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.

Wayne R. Stambaugh, Morristown,  Tennessee, for the appellant, Michael James Mery.

Edward R. Sempkowski, Morristown, Tennessee, for the appellee, Susan Lynn (Mery) Stansberry.

## OPINION

This dispute between the parties arises from their divorce in 2000, wherein the parties agreed to have joint custody of their two minor children, and share time equally.  In

September 2008, Susan Mery Stansberry ("mother") filed a Petition in Opposition to Father Relocating the Parties' Minor Children, stating that Michael Mery ("father") had given her written notice that he intended to move to North Carolina and take the children with him. She averred that she and the children had lived in Hamblen County their entire lives, and that she and the father had shared their time with the children equally, except for a period of months when the father was working in Colorado and the children resided with the mother. The mother averred that the children did well in school, had many relatives and friends in Hamblen County, and were active in their church and other extra-curricular activities. The mother averred the parties' 13-year-old son, Jacob, had announced that he wished to move with the father, but that this was only one factor that the Court should consider.

The parties attempted mediation, but the issues were not resolved, and the father answered, stating that he had relocated to Butler, North Carolina, and wished to have the children with him.

The parties entered an Agreed Temporary Order of Co-Parenting, which stated that the children had started school in Hamblen County and were residing with the mother, and that the father would have visitation every other weekend pending further orders of the Court.

A trial of the issues ensued, and numerous witnesses testified, including the parties. At the conclusion of the evidentiary hearing, the Trial Court took the case under advisement, and subsequently issued an Order resolving the issues.

The Court denied the father's request to relocate the children, and found that there had been a material change of circumstances since entry of the prior order, and incorporated its Memorandum Opinion.

In its Memorandum Opinion, the Court found the parties had agreed to joint custody in their divorce, and had shared basically equal time, except for a period of 9 months in 2003 when the father was working in Colorado and the children lived with the mother. The Court found the father now lives in North Carolina, and gave the mother notice of his intent to relocate with the children, which she opposed. The Court observed that in this situation, where the parents spent substantially equal intervals of time with the children, the provisions of Tenn. Code Ann. § 36-6-108(c) were applicable, and that the Court had to consider what was in the best interest of the children.

The Court considered the statutory factors, and found that both parents were committed to complying with a new arrangement as directed by the Court, and that both parents had loving, affectionate, and emotional ties with the children. The Court found that

both parties were disposed to provide food, clothing, medical and other care for the children. The Court found the mother had been the primary caregiver since the father's relocation in September 2008.

The Court found that the children attend school in Hamblen County, and that both were doing well and were involved in extra-curricular activities. Jacob was on the student council, enjoyed writing poetry, and presented a poem he wrote to the Hamblen County School Board earlier that year. The Court found that Jennifer participated in a speech contest and received special recognition.

The Court mentioned that the father expressed concerns about the mother being under the influence while caring for the children, but the evidence showed that she takes prescribed anti-anxiety medicine and her hair follicle test was negative. The Court observed that there was evidence that the mother had previously consumed alcohol while the children were with her on a few occasions, but that had not happened since the action was filed. The Court also observed that on a separate occasion the mother fell asleep while preparing a meal for the children, and on a another occasion, she did donuts in the car while the children were present.

The Court noted the mother had the support of her relatives and friends in her community, and that the children had a good relationship with their stepfather, but the father had no family near his new residence. The Court also stated that Jacob expressed his preference during an in camera examination, and considering all the relevant factors, it would not be in the best interests of the children to relocate.

Regarding a modification of the parenting plan, the Court found that there had clearly been a substantial change of circumstances warranting a modification. The Court said the modification was in the children's best interests, and found the mother should be the primary custodian, with the father having visitation of one weekend per month and 7 weeks in the summer. The Court then set child support to be paid by the father based on the child support worksheet, and found that each party should bear his or her own attorney's fees and split court costs.

The father has appealed, raising these issues:

A.      Having correctly found that a material change of circumstances had occurred warranting a change in the parties' co-parenting plan, whether the trial court erred by:

        1.      Failing to make sufficiently detailed findings of fact as to the best interests of the children consistent with factors set forth in Tenn. Code

Ann. §36-6-106(a) and 36-6-108(c);

2. Approving a parenting plan that was contrary to substantial evidence of record as to the best interests of the children;

3. Failing to consider the preference of the children; and

4. Failing to designate father as primary custodial parent.

B. In the alternative, whether the trial court's approval of a Permanent Parenting Plan awarding father only 92 days per year of time with the children should be reversed and remanded for a determination and award of a more equitable division of residential time between the parties.

On appeal, the father agrees that a material change of circumstances has occurred, but he disagrees that the Court's modification plan is in the children's best interests. First, the father argues the Trial court erred in failing to make detailed findings of fact with regard to the statutory factors, or to show how the factors applied to the evidence in the case. The Court did, however, make detailed findings of fact in this matter, as aforesaid. While the Court did not explicitly relate each finding of fact to a particular statutory factor, it is clear from reviewing the Memorandum Opinion that the Court did consider the relevant statutory factors and made his decision accordingly.

We conclude that the Trial Court did consider all of the relevant statutory factors regarding the children's best interests, and made specific findings of fact relating to the same. This issue is without merit.[1]

Next, the father argues that the Trial Court's parenting plan is contrary to the evidence of what is in the children' s best interests. The Trial Court made specific findings of fact related to the statutory factors listed in Tenn. Code Ann. §36-6-106(a), and concluded that the best interests of the children mandated a parenting plan wherein the mother was the primary residential parent. We review these findings of fact *de novo*, with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d).

The evidence preponderates in favor of the Trial Court's finding on these issues.

This Court has previously stated that appellate courts are "reluctant to second guess" a trial court's determination regarding custody and visitation because such decisions often

---

[1] It is of no consequence that the Trial Court made these factual findings in the section dealing with the father's proposed relocation, as the statutory factors related to relocation and best interests are basically the same as the factors related to modification of a parenting plan and best interests. *See*, Tenn. Code Ann. § 36-6-106(a) and 36-6-108(c).

hinge on subtle factors, such as the parents' demeanor and credibility during the proceedings. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999). Trial Courts have broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case, and we will only set aside a trial court's decision regarding custody or visitation when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *See Parker*, *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

The Trial court's decisions in this case do not "fall outside" that spectrum. The Trial Court heard and saw the witnesses testify, and while the Court did not make specific credibility findings, clearly, the Court did not give much credence to the allegations regarding the mother's drinking or endangering the children. We hold the evidence supports the Court's findings, and his rulings were well within the exercise of his discretion.

Next, the father argues that it was error for the Court to fail to consider the children's preference to live with the father, but the Trial Court did take into account Jacob's preference, and as the statute provides and as we have previously said, preference is but one factor in the overall best interest analysis:

> We have stated on numerous occasions that a child's preference is only one of many factors to be given consideration in a custody determination. While a child's preference can be considered, it is not controlling on the court. This Court has also held that it was error for a trial court to base its custody determination solely on the minor child's testimony regarding preference.

*Scoggins v. Scoggins*, 2008 WL 2648966 (Tenn. Ct. App. July 02, 2008); *In re NRG*, 2007 WL 1159475 (Tenn. Ct. App. April 19, 2007). We reiterate that the evidence supports the Trial Court's designation of the mother as the primary residential parent with custody of both children.

Next, the father argues the Trial Court erred in not giving him more time with the children. As the Supreme Court has previously explained:

> . . . the standard for appellate review of a trial court's child visitation order is controlled by our decision in *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). There, we noted that "the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge." *Id*. at 429 (*quoting Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App.1973)). Accordingly, we held that a "trial court's decision [on visitation] will not ordinarily be reversed absent some abuse of that discretion." *Id.*

*Eldridge v. Eldridge*, 42 S.W.3d 82 (Tenn. 2001). In the same opinion, the Court explained the limitations on our review of parenting plans, stating:

> It is not the function of appellate courts to tweak a visitation order in the hopes of achieving a more reasonable result than the trial court. Appellate courts correct errors. When no error in the trial court's ruling is evident from the record, the trial court's ruling must stand. This maxim has special significance in cases reviewed under the abuse of discretion standard. The abuse of discretion standard recognizes that the trial court is in a better position than the appellate court to make certain judgments. The abuse of discretion standard does not require a trial court to render an ideal order, even in matters involving visitation, to withstand reversal. Reversal should not result simply because the appellate court found a "better" resolution. An abuse of discretion can be found only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.

*Id.* at 88 (citations omitted).

In this case, there is no showing that the Trial Court abused its discretion in fashioning the parties' parenting plan. The Trial Court gave the father exactly what he had been willing to give the mother had he been named primary residential parent, and takes into consideration the distance between the parties and the transportation of the children back and forth.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Michael James Mery.

                                              _____

                                              HERSCHEL PICKENS FRANKS, P.J.