# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 24, 2011 Session

## JAMES ELDRIDGE v. KATIE HUNDLEY

**Direct Appeal from the Juvenile Court for Shelby County**
**No. S6522        Herbert J. Lane, Magistrate**

---

**No. W2011-00728-COA-R3-JV - Filed September 8, 2011**

---

Father filed a petition to modify the juvenile court's order naming Mother primary residential parent and establishing a visitation schedule. The trial court modified the visitation schedule, but did not establish visitation as requested by Father. Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Rachel L. Songstad-Lambert, Arlington, Tennessee, for the appellant, James Eldridge.

James Stephen King, Memphis, Tennessee, for the appellee, Katie Hundley.

## MEMORANDUM OPINION[1]

This appeal arises from a March 2008 petition to modify child custody and visitation, and comes to this Court after a disconcertingly protracted three-year journey in the Shelby county courts. The parties' child, "Becca," was born in August 2006. Shortly thereafter, Petitioner/Appellant James Eldridge (Mr. Eldridge) filed petitions in the Juvenile Court for

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Shelby County to establish parentage and for visitation. In his petition for visitation, Mr. Eldridge requested "liberal and frequent parenting time" with Becca. In December 2006, Mr. Eldridge filed an amended petition seeking joint decision making and shared parenting time on an alternate week basis. Following a hearing in February 2007, the juvenile court entered an order awarding the parties joint custody and naming Becca's mother, Respondent/Appellee Katie Hundley (Ms. Hundley) primary residential parent. The court ordered that Mr. Eldridge's parenting time would be the first, third and fifth weekends of each month, beginning 6:00 PM on Friday through 6:00 PM on Sunday; two weeks in the months of June and July; and part of the major holidays.

In March 2008, Mr. Eldridge filed a petition to modify the parenting plan. In his petition, Mr. Eldridge asserted that a substantial change of circumstance had occurred that warranted an increase in his parenting time. Mr. Eldridge filed a motion for mediation in August 2008, which was granted by the juvenile court in September 2008. The matter was continued until January 2009. Following several additional continuances, Mr. Eldridge's petition was heard by a juvenile court magistrate judge in November 2009. In December 2009, the magistrate judge entered an order stating that Ms. Hundley would remain Becca's primary residential parent and have decision-making authority. The magistrate modified Mr. Eldridge's parenting time with Becca to the first and third week of each month, and set Christmas visitation from 3:00 PM on December 25 through 6:00 PM on December 26. Ms. Hundley requested a hearing before the juvenile court judge.

Following a number of continuances , the matter was tried before a juvenile court special judge in March 2010. The juvenile court granted Mr. Eldridge's petition to modify the February 2007 order, but set his parenting time as every other weekend from 5:00 PM on Thursday through 5:00 PM on Sunday; two weeks in the months of June and July; and alternating holidays. The juvenile court entered its order on March 15, 2010, and Mr. Eldridge, acting *pro se*, filed a notice of appeal on the same day. In his notice of appeal, however, Mr. Eldridge erroneously appealed to the circuit court rather than this court. In April 2010, counsel for the parties filed notices of appearance, and the matter was heard in the circuit court in June 2010. In March 2011, the circuit court entered an order finding that it lacked jurisdiction and that jurisdiction over the appeal was proper in this Court. The circuit court transferred the matter to us by order entered March 2, 2011.

Upon preliminary review of the record, we determined the order appealed was not a final judgment where both parties had asserted claims for attorney's fees that had not been adjudicated in the juvenile court. On April 7, 2011, we entered an order requiring the parties to show cause why the matter should not be dismissed for lack of a final judgment. On April 14, 2011, the juvenile court entered an order providing that the parties would be responsible for their own attorney's fees. On June 20, 2011, the final brief was filed in this Court, and

we heard oral argument in the matter on August 24, 2011.

### *Issue Presented*

Mr. Eldridge presents the issue as whether the trial court erred by setting aside the December 2009 ruling of the juvenile court magistrate, which awarded Mr. Eldridge alternate week parenting time. However, because review by the juvenile court judge of Mr. Eldridge's March 2008 petition is *de novo*, the issue raised for our review, as we re-word it, is whether the trial court abused its discretion in establishing the visitation schedule.

### *Standard of Review*

We review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Accordingly, we will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo*, however, with no presumption of correctness. Tenn. R. App. P. 13(d). Our review of a trial court's application of the law to the facts is *de novo*, with no presumption of correctness. *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011).

### *Discussion*

The trial court has wide discretion to establish a parenting arrangement that is in the best interest of the child. Tennessee Code Annotated § 36-6-101(a)(2)(A)(2010); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted). The court's judgment often turns on subtle factors which require the court to assess the credibility and demeanor of the witnesses. *E.g., Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). We will not substitute our judgment for that of the trial court on these matters. *E.g., Eldridge*, 42 S.W.3d at 88. Rather, we will disturb a trial court's decision regarding parental responsibility only if it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id.*

A decree pertaining to a residential parenting schedule order may be modified where the petitioner demonstrates, by a preponderance of the evidence, that a material change of circumstance has occurred such that modification is in the best interests of the child. Tenn. Code Ann. § 36-6-101(a)(2)(C)(2010). Thus, the court must utilize a two-part test in determining whether a change of custody or visitation is warranted. First, it must determine whether a material change of circumstance has occurred that affects the child's well being. Second, if it finds a material change of circumstance that affects the child, the court must determine whether a change of custody is in the best interests of the child. *See id.*

In this case, Mr. Eldridge asserts that the alternate week visitation schedule established by the juvenile court magistrate was in Becca's best interest. He argues that the psychologists who testified at the March 2010 hearing testified that Becca was thriving under the alternate week arrangement, and that the trial court's judgment denying his petition to modify the visitation schedule was influenced by the court's observation that he and Ms. Hundley have not been able to effectively communicate with one another or to work together to make decisions jointly. Mr. Eldridge submits that, although the March 2010 proceeding before the juvenile court judge was a *de novo* proceeding to modify the 2007 visitation schedule, the fact that Becca was thriving under the alternate week visitation schedule established by the magistrate judge cannot be disregarded.

Ms. Hundley, on the other hand, contends the record supports the trial court's determination that joint parenting of Becca is not feasible in this case. She argues that the expert testimony of the psychologists was that equal parenting time is not successful when the parents cannot cooperate, and that the trial court considered the entire record when it determined the alternate week arrangement would not be successful in this case. Ms. Hundley asserts that this is demonstrated by the fact that, for example, although the referee's order of December 2009 gave her decision-making authority, Mr. Eldridge unilaterally changed childcare arrangements for Becca while she was in his care. Ms. Hundley does not cross-appeal, but asserts the trial court did not abuse its discretion when it established the visitation schedule in this case.

It is well-settled that the best interests of the child is the court's primary concern when establishing child custody and visitation schedules. In this case, the trial did not make specific findings of fact to support its determination as required by Rule 52.01 of the Tennessee Rules of Civil Procedure, as amended in 2009. In some cases, the trial court's failure to make such findings would be a basis for vacating the trial court's judgment and remanding the matter. *Wall v. Wall*, No. W2010–01069–COA–R3–CV, 2011 WL 2732269 at *26 n. 31 (Tenn. Ct. App. July 14, 2011)(*citing See, e.g., Clement Homes, Inc. v. Chilcutt*, No. W2009–02277–COA–R3–CV, 2010 WL 2812574, at *2 (Tenn. Ct. App. July 16, 2010)). In some instances, however, where we may review the record independently to determine whether the evidence supports the trial court's judgment, we have found it unnecessary to vacate the trial court's judgment based on the failure to comply with Rule 52.01. *Id.* In this case, the record transmitted contains evidence including the testimony of the expert witnesses; text messages and voice mail message of the parties; internet postings; myspace messages; and a transcript of the proceedings before the juvenile court that contains approximately five pages of the trial court's oral findings and conclusions. We accordingly find it unnecessary to vacate and remand this matter for written findings.

Upon review of the record, we cannot say that the trial court abused its discretion in

this case. It is clear that Mr. Eldridge and Ms. Hundley have had a highly contentious relationship. Their relationship ended shortly after Ms. Hundley became pregnant. Ms. Hundley began dating her current husband before Becca was born, and Mr. Eldridge began dating his current wife shortly after Becca's birth. The transcript of the proceedings contains a finding by the trial court that Mr. Eldridge and Ms. Hundley "are not able to get along with one another" and "are not able to work together" despite "hav[ing] gone on with their respective lives." The trial court stated, "I don't find that it's in the child's best interest that this 50/50 time take place," but that Mr. Eldridge should have "significant visitation."

When this matter was heard in March 2010, the parties each had married their current spouses, and Mr. Eldridge and his wife had a one-year old child. However, the parties undisputedly could not get along with one another. There is nothing in the record to suggest that the trial court's March 2010 order demonstrates an abuse of discretion, or that the visitation established by the special judge would not be in Becca's best interest, particularly as she approaches school age and where the parties reside in different counties.

Although the issue before the trial court in March 2010 was whether a substantial and material change in circumstance had occurred since entry of the 2007 order such that a modification of custody was warranted, Mr. Eldridge asserts that the expert testimony with respect to Becca's adjustment to the week on/week off schedule should not be disregarded. The expert testimony in this case, as we read it, was that at the time of the March 2010 hearing, Becca was basically a "normal" three-year old.

Dr. Amy Beebe ("Dr. Beebe") testified that she had never met Ms. Hundley, but had met with Mr. Eldridge and Becca twice in her office and once at Mr. Eldridge's home. She testified that Becca appeared to be a "very typical three-year old" developmentally, and that her relationship with Mr. Eldridge was "very appropriate, very typical." Dr. Beebe stated that Becca was "a little clingy," but that was within the range of normal behavior for a three-year old. Dr. Beebe also testified that whether equal parenting time may be successful must be assessed on a case-by-case basis, and that the success of any visitation schedule depended on the cooperation of the parents. She testified that for Becca's age the week on/week off schedule was not her "first choice," and that ideally children would see their parents every day.

Dr. John Ciocca ("Dr. Ciocca") testified that Becca could "tolerate a split custody arrangement," and that time apart from either parent should not be more than three or four days. Dr. Ciocca testified that alternating three or four day visitation periods with each parent might be best, but that the court might need to "revisit the parenting arrangements" when Becca approached school age. Dr. Ciocca stated that the teachers at Becca's pre-school did not indicate that Becca's separation anxiety had improved since the referee's December

2009 order, but that they had seen a gradual reduction over an extended period of time predating the 2009 order. Dr. Ciocca's testimony largely confirmed Dr. Beebe's that Becca was a developmentally-appropriate three-year old.

Mr. Eldridge has failed to carry his burden on appeal to demonstrate that the trial court's March 2010 judgment constitutes an abuse of discretion. Additionally, his assertion that observations of Becca in May 2010 suggested that Becca experienced more anxiety following the March 2010 order of the trial court is not in the record before us. In addition to the expert testimony noted above, the record contains evidence with respect to the parties' behavior toward each other to support the trial court's determination that a joint custody or equal parenting arrangement would not be successful in this case.

### *Holding*

In light of the foregoing, the judgment of the trial court naming Ms. Hundley primary residential parent with decision-making authority and establishing residential parenting time for Mr. Eldridge is affirmed. We join the trial court in reminding that parties that cooperating with each other as they raise Becca, and treating one another with courtesy and respect, is in Becca's best interest. Ms. Hundley's request for attorney's fees on appeal is denied. Costs of this appeal are taxed to the Appellant, James Eldridge, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE