IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 13, 2010 Session

**DARREN PERRY and MECHELLE PERRY**

v.

**ALL UNKNOWN PARTIES HAVING ANY INTEREST IN THE PROPERTY KNOWN AS THE MATHIS CEMETERY LOCATED ON LOT 10 OAK WOODS, MEDINA, TENNESSEE, INCLUDING, BUT NOT LIMITED TO, ANY HEIRS OF MOLLIE J. HERRON, CARLTON MATHIS, IMOGENE G. MATHIS, JAMES W. MATHIS, MARY MATHIS, THOMAS W. MATHIS, and JOSEPH E. MATHIS.**

**Appeal from the Chancery Court of Gibson County**
**No. H-5487    George R. Ellis, Chancellor**

_____

**No. W2010-00822-COA-R3-CV - Filed December 28, 2010**
_____

This appeal arises from a petition to terminate the use of property as a burial ground. The plaintiffs purchased property in which an abandoned cemetery was situated. They filed this complaint for court approval to terminate the use of the property as a burial ground and remove and reinter the remains to another cemetery, pursuant to Tennessee statutes. An attorney ad litem was appointed to represent unknown parties with an interest in the abandoned cemetery. The attorney ad litem investigated and did not oppose the relief sought. The plaintiffs filed a motion for default judgment. The trial court denied the motion for default judgment and dismissed the case. The plaintiffs appeal. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
is Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Ryan K. Porter, Jackson, Tennessee, for the Plaintiff/Appellants, Darren and Mechelle Perry

Donnie W. Knott, Milan, Tennessee, Attorney Ad Litem for the Defendant/Appellees, Unknown Parties having any interest in the property known as the Mathis Cemetery located on Lot 10 Oak Woods, Medina, Tennessee

## OPINION

### FACTS AND PROCEEDINGS BELOW

In September 2007, Darren and Mechelle Perry (collectively "Perrys") paid $44,000 for a lot in a residential subdivision in which numerous homes are being built.[1] The Perrys purchased the lot for the purpose of building their dream home.

The lot purchased by the Perrys has a small cemetery on it, the Mathis Cemetery. There are seven Mathis family members buried in the Mathis Cemetery, the last of whom died in 1888.[2] The cemetery is overgrown with tall weeds and some of the headstones are knocked over.

The Perrys undertook to have the remains in the Mathis Cemetery removed from their lot and reinterred in another cemetery, and terminate the use of the property as a burial ground, pursuant to Tenn. Code Ann. §§ 46-4-101 *et seq.* They attempted to locate descendants of those buried in the Mathis Cemetery, or any other persons interested in the Cemetery, by searching land records dating back to the year 1821, and by searching probate records surrounding each decedent. They also attempted to contact an individual who contributes to an internet website devoted to rural west Tennessee cemeteries. The investigation did not yield the names of any interested persons, and in fact indicated that the persons buried in the Mathis Cemetery had no living descendants.[3]

---

[1]The Perrys' lot is Lot 10 in the Oak Woods Subdivision.

[2]The individuals buried in the Mathis cemetery are Mollie J. Herron, Carlton Mathis, Mary Mathis, Imogene G. Mathis, James W. Mathis, Thomas W. Mathis, and Joseph E. Mathis.

[3]Decedents Carlton and Mary Mathis were the parents of four children: Imogene, James, Thomas, and Joseph. Two of these children, Thomas and Joseph, passed away by the age of five. Imogene passed away at age seventeen and there is no record of her having any children. Decedent Mollie Herron is also buried with the family; she was the wife of G. W. Herron and the daughter of W. T. and A. E. Mathis. Extensive research was done with respect to possible descendants of Mollie Herron, James Mathis, and Carlton Mathis. Records were found documenting James Mathis's enlistment in the Confederate Army on December 1, 1863, and his desertion from Camp Bell on December 6, 1863. There was some speculation that Carlton Mathis may have had siblings, but neither the alleged siblings nor their heirs could be identified. No heirs were found with respect to either Mollie Herron or James Mathis. A record dated December 1882 documents a property transfer from Carlton Mathis to L. E. Golan. As consideration for the property, L. E. Golan agreed to provide Carlton Mathis care for the rest of his life, implying that he had no other family to care for him. No heirs or descendants of Carlton Mathis were found. The website documenting west Tennessee rural cemeteries indicated that the last known maintenance of the Mathis Cemetery was in 1981, when new markers were placed for two of the decedents.

On August 18, 2009, pursuant to the statutes, the Perrys filed a complaint against the defendant "Unknown Parties having any interest in the property known as the Mathis Cemetery located on Lot 10 Oak Woods, Medina, Tennessee, including but not limited to the heirs of" the seven known persons buried in that Cemetery ("Defendants"). The complaint asked the trial court to terminate the use of the property as a burial ground, and to terminate all rights and easements to use it as a burial ground. The Perrys requested court approval to allow them to remove all remains and artifacts, and reinter them in the Medina Cemetery.

On the same day, the Perrys filed a motion for court permission to effect service of process on the Defendant Unknown Parties by publication, pursuant to T.C.A. §§ 21-1-203 -204. The motion outlined the Perrys' efforts to locate descendants and heirs of the decedents. The trial court granted the motion for permission for service by publication, and appointed an attorney ad litem to represent the Defendant Unknown Parties.[4]

Pursuant to the trial court's order, the Perrys effected service of process on the Defendant Unknown Parties by publication. A notice to heirs of the named decedents concerning the Mathis Cemetery in Lot 10 in Oak Woods, Medina, Tennessee, ran for four consecutive weeks in *The Humboldt Chronicle*, a newspaper published weekly in Gibson County. There was no response to the published notice or to the Perrys' complaint.

On September 29, 2009, the Perrys filed a motion for default judgment against the Defendant Unknown Parties. An affidavit by Mr. Perry was submitted in support of the motion for default judgment. The affidavit stated that the Perrys own the land on which the Mathis Cemetery is situated, and that the Cemetery is overgrown with weeds and appears abandoned. The affidavit avers that the land immediately surrounding the Mathis Cemetery is being developed into a residential area. Mr. Perry states in the affidavit that he will be responsible for all costs associated with relocating the remains to the Medina Cemetery, including the erection of suitable memorials, and represents that the relocation and reinterment will be done with due care and decency. The Perrys' attorney also filed a memorandum of law in support of the motion for default judgment, outlining the requirements under T.C.A.§§ 46-4-101 *et seq.*, and arguing that the Perrys had met the statutory requirements.

On January 8, 2010, the attorney ad litem filed her report with the trial court. The report stated that the attorney ad litem was unable to find any information regarding the possible heirs of the decedents buried in the Mathis Cemetery, other than the information found by the Perrys. The report stated that the attorney ad litem found "no reason why this situation does not fit within the realm of [Tenn. Code Ann., section 46-4-101, *et al.*]." The report

---

[4]The record does not contain a written order appointing the attorney ad litem. The attorney ad litem report was submitted by attorney Hillary Ladler Barham.

named additional resources available to the Perrys for them to proceed with the disinterment process in an appropriate manner.

On February 22, 2010, the Perrys and the attorney ad litem presented the trial court with a proposed order granting the Perrys' motion for default judgment and termination of use of the property as a burial ground. The order was signed by the attorney ad litem and the attorney for the Perrys before it was presented to the trial court. No proof was presented.

On March 2, 2010, the trial court issued an order denying the motion for default judgment and dismissing the case. The order outlined the steps taken by the Perrys in compliance with the statutes, and described the report of the attorney ad litem. The order did not set forth the reasons for the trial court's denial of the default judgment or its dismissal of the case. The Perrys timely filed a notice of appeal.

On August 13, 2010, the trial court substituted Donnie Knott as the attorney ad litem for the Defendant Unknown Parties.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Perrys contend that the trial court erred in denying their motion for default judgment, and in dismissing their complaint.

We review a trial court's denial of a motion for default judgment under an abuse of discretion standard. *Logan v. Civil Serv. Comm'n of City of Memphis*, No. W2007-00324-COA-R3-CV, 2008 WL 715226, at \*10 (Tenn. Ct. App. Mar. 18, 2008). Under an abuse of discretion standard, a trial court's ruling will be upheld so long as reasonable minds can disagree as to the propriety of the decision made. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). A trial court abuses its discretion only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining. *Mercer v. Vanderbilt University, Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004); *Ballard v. Herzke*, 924 S.W.2d 7652, 661 (Tenn. 1996).

The trial court's dismissal of the case operated as an adjudication on the merits; therefore, our review of the dismissal is *de novo* with no presumption of correctness. *McNabb v. Highways, Inc.*, 98 S.W.3d 649, 651-52 (Tenn. 2003).

## ANALYSIS

On appeal, the Perrys argue that they complied with all of the requirements set forth in Tenn. Code Ann. §§ 46-4-101 *et seq.*, for removing and relocating the remains buried on their

property, and for terminating the use of the property as a burial ground. They note that the language used in § 46-4-104 is mandatory, that is, if the requirements of the statute are met, the trial court must grant the requested relief. Under these circumstances, they argue, the trial court abused its discretion in denying their motion for a default judgment. Moreover, they contend, the trial court had no basis for dismissing the case, and ask this Court to reverse.

The substitute attorney ad litem for the Defendant Unknown Parties also filed a brief in this appeal. The substitute attorney ad litem indicates in his brief that he also attempted to locate any relatives of the decedents buried in the Mathis Cemetery or any other persons with an interest in the Cemetery, and found none. The substitute attorney ad litem asserts on appeal that the Perrys fully complied with the statutory requirements of T.C.A. § 46-4-101 *et seq.*, and that he found no reason for denying the Perrys' motion for default judgment.

In its order denying the Perrys' motion for default judgment and dismissing the case, the trial court did not indicate a reason for its decision. Therefore, we review the record in light of the applicable statutes to determine whether the trial court erred in its decision.

Over a half-century ago, Tennessee's General Assembly enacted comprehensive statutes setting forth the circumstances under which a burial ground may be closed. ***See State ex rel. Commission of Transportation v. Medicine Bird Black Bear White Eagle***, 63 S.W.3d 734, 747, 750 (Tenn. Ct. App. 2001) (Koch, J., reviewing burial and reinterment customs and laws dating back to prehistoric times). Specifically, the statutes provide that the use of land as a burial ground may be terminated if:

> (1) The burial ground is abandoned; or
> (2) The burial ground is in a neglected or abandoned condition; or
> (3) The existence of any conditions or activities about or near the burial ground . . . render the further use of the burial ground . . . inconsistent with due and proper reverence or respect for the memory of the dead, or for any other reason unsuitable for those purposes.

T.C.A. § 46-4-101(1-3) (2005). The statutes outline the procedure for closure of a burial ground and reinterment of the remains:

> The statutory procedure devised by the General Assembly for closing a burial ground is straightforward. Any "interested person or persons" or any municipality or county in which the burial ground is situated may file suit in the chancery court sitting in the county where the burial ground is located. Tenn. Code Ann. § 46-4-103(a) . . . Following a hearing, the trial court "shall"

grant the request to close the burial ground if the following four conditions are met:

> (1) any one of the conditions specified in Tenn. Code Ann. § 46-4-101 exist;
> (2) the property is unsuitable for use as a burial ground for any reason or the continued use of the property as a burial ground is inconsistent with due and proper reverence or respect for the memory of the dead;
> (3) definite and suitable arrangements have been made or will be made for the reinterment of the human remains; and
> (4) the removal and reinterment of the human remains will be "done with due care and decency, and that suitable memorial or memorials will be erected at the place of reinterment."

*Eagle*, 63 S.W.3d at 750-51 (quoting T.C.A. § 46-4-104) (footnote omitted). The statutes provide that "unknown defendants may be proceeded against by order of publication and publication in the manner provided by law." Tenn. Code Ann. § 46-4-103(b) (2005).

Applying the statutes to the facts in the case at bar, the Perrys, as the owners of the property on which the burial ground is situated, are clearly within the class of "interested persons" who may "bring . . . a suit in the chancery court in which the burial ground is situated." In their complaint filed in the Chancery Court below, the Perrys sought relief authorized under the statutes, to wit:

> (1) To have the remains of all deceased persons buried in the burial ground removed from the burial ground and reburied in a suitable repository to be obtained for that purpose before their removal from the burial ground; [and]
> (2) To terminate the use of, and all right and easements to use, the ground as a burial ground, and all rights and easements incident or appurtenant to the ground as a burial ground.

T.C.A. § 46-4-103(a)(1-2) (2005).

The Perrys conducted an investigation of the decedents buried in the Mathis Cemetery, in an effort to identify and locate the heirs or any other persons with an interest in the Cemetery. They found none. There is no indication in the record that the Perrys' investigation was perfunctory or otherwise unsatisfactory. To the contrary, not one, but two attorneys ad litem conducted an independent investigation, with the same result.

Consequently, the Perrys sought, and obtained, permission to effect service of process on the Defendant Unknown Parties by publication, as authorized under T.C.A. § 21-1-204.[5] The record shows that all of the requirements under this statute were met by publication in *The Humboldt Chronicle* for four consecutive weeks, with all of the required information in the published advertisement. There was no response to the published advertisement, and no person filed an answer to the Perrys' complaint.

Thereafter, the Perrys filed their motion for default judgment, submitting proof in the form of an affidavit by Mr. Perry, demonstrating that the Mathis Cemetery was overgrown and appeared abandoned. *See* T.C.A. §§ 46-4-101(1) and (2). Mr. Perry also stated in his affidavit that the land surrounding the Mathis Cemetery is being developed as a residential subdivision. *See* T.C.A. § 46-4-101(3). In accordance with the statutory mandate to show that "definite arrangements" had been made for removal and reinterment "with due care and decency," Mr. Perry's affidavit stated that the remains would be interred in the Medina Cemetery, that the work would "be done with due care and decency," and that he would pay for the cost of removal, for reinterment and for memorials. *See* T.C.A. § 46-4-104 (2005).[6]

---

[5]T.C.A. § 21-1-204 (2005) states:

> (a) In case personal service is not used, if the defendant does not cause an appearance to be entered, the clerk, as soon as the necessary affidavit is made, shall enter upon the rule docket an order requiring the defendant to appear at a certain day named in the order, being a rule day, and defend, or otherwise the bill will be taken for confessed.
> (b) The clerk shall forthwith cause a copy of this order to be published for four (4) consecutive weeks in the newspaper mentioned in the order or designed by the general rules of the court.
> (c) The order for publication in lieu of personal service may be made at any time after the filing of the bill. The order of publication should contain the names of the parties, the style of the court in which the proceedings are had and the name of the place where the court is held, without any brief or abstract of facts, unless directed by the court.
> (d) When the suit is against an unknown defendant, the order of publication should describe the unknown party, as near as may be, by the character in which the unknown party is sued, and by reference to the unknown party's title or interest in the subject matter of the litigation.
> (e) Evidence of the publication in pursuance of the order may be by affidavit of the printer or actual production of the newspaper in court.

[6]T.C.A § 46-4-104. Granting of Relief; Provision for reinterment

> Such removal and reinterment, and other relief described in § 46-4-103, . . . *shall* be granted, authorized, decreed and ordered by the court upon the court finding, upon the hearing of the cause upon the entire record, including the pleadings and proof, that any one (1) or more of

(continued...)

After that, the attorney ad litem filed her report setting forth the results of her independent investigation and stating that there was no reason for the trial court to deny the relief sought.

From our thorough review of the record, it appears that the requirements of T.C.A. §§ 46-4-101, 102, 103, and 104 were fulfilled completely. Under these circumstances, § 46-4-104 states that the request for removal and reinterment "shall be granted" by the trial court. T.C.A. § 46-4-104 (2005).

We consider, then, whether the trial court erred in declining to grant the Perrys' motion for a default judgment against the Defendant Unknown Parties and granting the relief requested. Rule 55.01 of the Tennessee Rules of Civil Procedure authorizes the court to grant a default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise." TENN. R. CIV. P. 55.01. Rule 55.01 requires the party seeking default judgment to "apply to the court." *Id.* In the case at bar, the Perrys filed a proper motion for default judgment, supported by the affidavit of their attorney of record, stating that service was effected by publication in accordance with the applicable statutes, and that the Defendant Unknown Parties failed to plead or otherwise defend.

The language in Rule 55.01 is not mandatory; the decision of whether to grant a default judgment is in the sound discretion of the trial court. *Logan*, 2008 WL 715226, at *10. In this case, however, we searched in vain for a reason not to grant the motion for a default judgment. We can only conclude that the trial court's denial of the Perrys' default judgment motion in this case is "a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (citations omitted). Thus, we must reverse the trial court's denial of the motion for default judgment.

For the same reasons, we reverse the trial court's dismissal of the case. The cause must be remanded to the trial court with directions to enter an order granting the Perrys' motion for default judgment and granting the relief requested.

---

[6](...continued)

> the reasons specified in § 46-4-101 exist, and that due to the same, the burial ground is unsuitable for use as a burial ground and as a resting place for the dead whose remains are buried therein, or that the further use thereof for those purposes is inconsistent with due and proper reverence or respect for the memory of the dead, or for any other reason unsuitable for those purposes. . . .

## CONCLUSION

The decision of the trial court is reversed, and the cause is remanded with instructions to enter a default judgment in favor of the Appellants. Costs on appeal are to be taxed to Appellants Darren and Mechelle Perry and their surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE