IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 24, 2014 Session

## JOE HOUGHLAN HOOPER, III v. AMANDA MARIE BURES HOOPER

**Appeal from the Circuit Court for Davidson County**
**No. 11D2708      Philip E. Smith, Judge**

---

**No. M2013-01019-COA-R3-CV - Filed April 25, 2014**

---

In this divorce action, Father appeals the denial of his motion to suspend Mother's parenting time and the decision to lower Mother's child support; he also requests that this court modify the residential parenting schedule. Mother appeals the trial court's calculation of the number of days she exercises parenting time in determining the amount of child support she was ordered to pay. Finding that the court erred in its calculation of Mother's residential time, we vacate the award of child support and remand for recalculation; in all other respects, the judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part and Affirmed in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, M. S., P. J., and FRANK G. CLEMENT, J., joined.

Katherine A. Brown and Tyree B. Harris, IV, Nashville, Tennessee, for the appellant, Joe Houghlan Hooper, III.

Shannon L. Crutcher, Nashville, Tennessee, for the appellee, Amanda Marie Bures Hooper.

### OPINION

Joe Hooper, III ("Father") and Amanda Hooper ("Mother") were married February 21, 2003; five children were born of the relationship. This divorce action was instituted in September 2011; trial took place on November 14 and 20, 2012. On March 8, 2013, while the case was under advisement, Father moved to suspend Mother's parenting time, alleging that Mother had failed to provide an appropriate residence because she was sharing an

apartment with a man with whom she had an affair.[1]  A hearing was held on the motion on March 22.

On March 28, 2013 the court entered the final divorce decree, which incorporated a Permanent Parenting Plan designating Father as primary residential parent and setting Mother's parenting time every other week from Thursday at 6:00 p.m. until Monday morning and from Wednesday at 6:00 p.m. until Thursday morning on the weeks that she was not exercising parenting time.  The court calculated Mother's child support obligation to be $422.00 per month, to which it applied a downward deviation, resulting in an order that she pay $100.00 per month.  On April 8 the court entered an order denying Father's motion to suspend Mother's parenting time.

Both parties appeal.  Father raises the following issues:

1. Whether the trial court erred in arbitrarily granting the Mother a downward deviation in child support?

2. Whether the trial court erred in failing to temporarily suspend the Mother's expanded parenting time with the parities' minor children and in failing to impose sufficient restrictions on the Mother's parenting time to ensure the safety and well-being of the minor children?

3. Whether the Permanent Parenting Plan should be modified to provide a schedule for the Mother's parenting time which is far less disruptive to the children's schedule?

4. Whether the trial court correctly ruled that to calculate the number of days of parenting time for purposes of the Child Support Worksheet, that whichever parent has the child for 12 hours and 1 minute a 24-hour period, with the 24-hour period beginning at midnight, that parent will get credit for that day?

Mother raises the following issue:

1. Whether the trial court erred in its calculation of the number of days that Mother is responsible for the care of the minor children for purposes of determining her support obligation under the Tennessee Child Support Guidelines?

---

[1] According to the motion, the court had ordered Mother to establish a "separate and satisfactory residence conducive to the exercising of parenting time."

## DISCUSSION

### I. DID THE COURT ERR IN CALCULATING MOTHER'S CHILD SUPPORT OBLIGATION

The permanent parenting plan designates Father as primary residential parent. Mother exercises residential parenting time every other Thursday from 6:00 p.m. until the following Monday morning when she takes the children to school or to their grandmother's home; on alternate weeks she exercises parenting time from Wednesday at 6:00 p.m. until the next morning when she takes the children to school or to their grandmother's home. Mother also exercises residential time for half of the children's fall, spring, and winter breaks, Mother's Day, and every other week during the summer. Mother's child support obligation was calculated based on her exercising 110 days of parenting time[2]; in calculating Mother's parenting time, the court stated:

> The days for purposes of the Child Support Worksheet will be calculated based on the Court's schedule set forth herein, and when counting days, the day starts at midnight. Some lawyers like to tailor it to try to give their client the benefit of additional days but we are going to keep it simple. We are going to start a day just like they have always been counted, and they start at midnight. Whoever has the children for 12 hours and 1 minute with a 24-hour period, with the 24-hour period beginning at midnight – that is the person that gets credit for that day.

Mother contends that the trial court erred in calculating the number of days she exercises parenting time for the purpose of determining her child support obligation and that a proper calculation results in a finding of 146 days of parenting time rather than 110.

In *Stogner v. Stogner*, 2012 WL 1965598 (Tenn. Ct. App. 2012), we applied the definition of days set forth at Tenn. Comp. R. & Regs. 1240-2-4-.02 (10)[3] and held that a

---

[2] The court set Father's monthly income at $4,666.66 and Mother's at $2,107.00; the parties do not raise an issue on appeal as to the income set.

[3] The Tennessee Child Support Guidelines define "day" for the purposes of determining calculating child support as follows:

> "Days" -- For purposes of this chapter, a "day" of parenting time occurs when the child spends more than twelve (12) consecutive hours in a twenty-four (24) hour period under the care, control or direct supervision of one parent or caretaker. The twenty-four (24) hour period need not be the same as a twenty-four (24) hour calendar day. Accordingly, a "day" of parenting time may encompass either an overnight period or a daytime period, or a

father whose parenting time began on Friday at 6:00 p.m. and ended at 8:00 a.m. the following Monday should be credited with three days rather than two, because the child spent more than twelve consecutive hours in a twenty-four hour period under the father's care. *Id.* at 4.

Consistent with the rationale and holding of *Stogner*, Mother should have been credited with 146 days of parenting time in the calculation of her child support obligation. Applying Tenn. Comp. R. & Regs. 1240-2-4-.02 (10), Mother's parenting time beginning on Thursday at 6:00 p.m. until 7:00 a.m. the following Monday when Mother takes the children to school[4] is calculated at four days; similarly, Mother's mid-week visitation from Wednesday at 6:00 p.m. until 7:00 a.m. on Thursday is calculated at one day. As a result of the error in calculating Mother's parenting time, we vacate the award of child support and remand the case for recalculation of the child support.

In light of our holding, Father's contention that the court erred in granting Mother a downward deviation in her child support is pretermitted.

## II. MOTION TO SUSPEND MOTHER'S PARENTING TIME

On November 29, 2012 the court announced its findings of fact and ruling from the bench; these were incorporated into a final divorce decree entered on March 25, 2013. Prior to the entry of the final decree, Father filed a motion asking the court to suspend Mother's parenting time, alleging that Mother had failed to obtain an appropriate residence as ordered in the ruling on November 29, 2012. Specifically, Father asserted that Mother's living arrangements were inappropriate because she was sharing an apartment with a man with a criminal past and with whom she had an affair.[5] Mother responded to the motion and the

---

combination thereof.

Tenn. Comp. R. & Regs. 1240-2-4-.02 (10).

[4] High schools in Davidson County begin at 7:05 a.m., middle schools begin at 8:55 a.m., and elementary schools begin at 8:00 a.m. *See* http://www.mnps.org/site234.aspx .

[5] Father alleged in his motion that:

1. At the time that this Honorable Court announced its decision on 29 November 2012 finalizing the dissolution of the marriage by and between the parties, the Defendant/Mother, Amanda Marie Bures Hooper, was directed to establish a separate and satisfactory residence conducive to the exercising of parenting time with the said five minor children within forty-five days of that date.

2. Contrary to that mandate, the Defendant/Mother, Amanda Marie Bures Hooper, wilfully

4

court examined her at the March 22 hearing.[6] On April 8, the court entered an order denying the motion, stating:

> . . . that in the absence of proof of specific, immediate harm to the five minor children of the parties by virtue of the presence of [Mother's boyfriend], the court being of opinion that the Motion was not well taken and should be denied but that henceforth the said [Mother's boyfriend] should be deemed to be a social guest at the residence of the [Mother] and will not share sleeping arrangements either with [Mother] or the five minor children of the parties when any periods of parenting time are being exercised as Ordered by the Court.

Father appeals, asserting that the court applied an incorrect legal standard "in holding that in order to modify the parenting plan, there must be evidence of specific, immediate harm to the minor children;" he asserts that the correct standard is that set forth at Tenn. Code Ann. § 36-6-101(a)(2)(C) applicable to material change of circumstances, pursuant to which a substantial risk of harm to the child is not required.[7]

---

> and wantonly failed to abide by that deadline and rather only recently established a residence of any sort thereby departing the residence of her former step-mother.

In her response, Mother stated:

> 2. It is admitted that the Court stated it wanted Mother to get her own place within 45 days; however, Mother did not have the financial ability to do so until she received her income tax refund. As such, Mother did not wilfully and wantonly fail to abide by the Court's Order as represented in Father's motion. Mother made numerous attempts to find a residence that she could afford within the area so as to stay in, or near, the children's respective school zone. On February 11, 2013, Mother signed a Lease Agreement and took possession on an apartment at Abbington Heights.

The order adopting the oral ruling was not entered until March 25, 2013; no issue was raised at the hearing on the motion or on appeal that the November 29 oral ruling was not a valid order for purposes of the relief sought by Father.

[6] There is no transcript of the hearing in the record; the order entered on the motion reflects that the court examined Mother and heard arguments of counsel.

[7] Tenn. Code Ann. § 36-6-101(a)(2)(C) provides:

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child.

5

As an initial matter, we do not agree that § 36-6-101(a)(2)(C) applies to the consideration of Father's motion. At the time the motion was filed, there was no parenting plan in place; rather, the parties were operating pursuant to the court's oral ruling on November 29. The relief sought in the motion, as acknowledged by Father in his brief on appeal, did not seek to permanently terminate Mother's parenting time but, rather, to suspend it until such time as she complied with the court's order to obtain better living arrangements for the children. In this circumstance, it was more appropriate for the court to treat the matters raised in the motion as details relative to custody or visitation rather than to apply the standard applicable to permanent modifications of an existing parenting plan.[8] In either event, in reviewing the court's denial of the motion, we apply the deferential abuse of discretion standard of review.[9]

In her response to the motion, Mother stated that she did not have the financial ability to obtain a residence as ordered by the court; that she was living in an apartment with her boyfriend, whom the court determined at trial had prior felony drug convictions. Mother asserted that her boyfriend had a good relationship with the children and did not pose any risk to the children; that she and her boyfriend slept in one bedroom, three of the children slept in a bed in the second bedroom, and the other children slept on a large sectional sofa; and that as the result of a referral from Father, a Department of Children Services worker conducted a home visit and "had no issue with the living arrangements or the environment as relates to the minor children." The court held a hearing on the motion at which it examined Mother.

The concerns Father expressed in the motion related to the sleeping arrangements in Mother's home and the character of her boyfriend. The court knew of Mother's boyfriend and his criminal history from testimony at trial and, presumably, interrogated Mother regarding these matters in the course of examining her; viewed in this context, the court's remark that

---

A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

[8] "[T]he details of custody and visitation with children are peculiarly within the broad discretion of the trial judge". *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)

[9] A trial court's decision on visitation will not be reversed absent an abuse of discretion. *Suttles*, 748 S.W.2d at 429. A discretionary decision will only be set aside when a court "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (citing *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

6

there was no "specific, immediate harm" to the children was appropriate. As noted earlier, the court ordered that Mother's boyfriend not share sleeping arrangements with Mother while the children were present in the order denying the motion.

Giving deference to the trial court, the evidence does not show that the court abused its discretion in not suspending Mother's parenting time.

## III. PARENTING PLAN

Without assigning particular error in the trial court's fashioning of the parenting plan, Father asks this court to modify the plan to "provide for a schedule for the Mother's parenting time which is less disruptive to the children." He asserts that during the school year Mother should exercise parenting time from Friday evening until Sunday evening and that alternating weeks of parenting time during the summer is disruptive because it interferes with the children's summer activities and sports.

Trial courts are vested with broad discretion in fashioning parenting plans. *Burton v. Burton*, 2009 WL 302301, at *2 (Tenn. Ct. App. Feb. 9, 2009). Consequently, a trial court's decision regarding a permanent parenting plan will be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

In the Final Decree the court made findings of fact relative to the factors at Tenn. Code Ann. § 36-6-106(a)[10] and stated:

> The decision made by the Court today in finding best interests is, and the Court is going to say this, while no parent is held to a standard of perfection, the Court does find major fault with both of your parenting methods of these children.

---

[10] Tenn. Code Ann. § 36-6-106(a) provides in part:

In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in subdivisions (a)(1)-(10), the location of the residences of the parents, the child's need for stability and all other relevant factors.

The statute goes on to set forth ten factors for a court to consider when making custody determinations.

> Both of you have been guilty, the Court thinks, of inappropriate parenting-gross inappropriate parenting-in your actions towards each other. Be that as it may, the Court is charged as the finder of fact and as the trial judge to make a decision in the best interest of these five minor children, and the Court does find pursuant to Tenn. Code Ann. § 36-6-106 that it is in the best interest of these five minor children for Husband to be named as the primary residential parent.

In fashioning the residential parenting time schedule, the court appropriately referenced the factors at Tenn. Code Ann. 36-6-404.[11]

> The concerns raised by Father relative to the children's schedule are inherent in any parenting plan. The law requires trial courts to develop a parenting plan which will allow both parents to have maximum participation in their children's lives, *see* Tenn. Code Ann. § 36-6-106(a), and to encourage a "loving, stable and nurturing relationship" with both parents. *See* Tenn. Code Ann. § 36-6-404(b). The court fashioned a parenting plan which is consistent with the factors the court is required to consider and which provides both parents the opportunity to be involved in their children's lives. To the extent Father's concerns create difficulties in the future, the court retains the ability to modify the parenting schedule. *See* Tenn. Code Ann. § 36-6-405.

> Again giving deference to the trial court, we decline to disturb the parenting schedule.

---

[11] Tenn. Code Ann. § 36-6-404 requires a final decree of divorce in cases involving children to incorporate a permanent parenting plan, including a residential parenting schedule; § 36-6-404(b) provides in part:

> Any permanent parenting plan shall include a residential schedule as defined in § 36-6-402. The court shall make residential provisions for each child, consistent with the child's developmental level and the family's social and economic circumstances, which encourage each parent to maintain a loving, stable, and nurturing relationship with the child. The child's residential schedule shall be consistent with this part.

The statute then proceeds to set forth fifteen factors and a sixteenth discretionary catch-all provision a court is to consider when determining residential parenting time. *See Bryant v. Bryant*, No. M2007-02386-COA-R3-CV, 2008 WL 4254364, at *5–6 (Tenn. Ct. App. Sept. 16, 2008).

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed in part and vacated in part. The case is remanded for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE