# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 15, 2011 Session

## CLARENCE ANDREW ELCAN v. AMANDA HART ELCAN

**Appeal from the Circuit Court for Davidson County**
**No. 07D1698      Joseph P. Binkley, Jr., Judge**

---

**No. M2011-00530-COA-R3-CV - Filed March 7, 2012**

---

In this post-divorce dispute, the trial court granted father's petition to modify the parenting plan and denied mother's subsequent petition to modify the parenting plan. We affirm the trial court's decisions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Larry Hayes, Jr., Nashville, Tennessee, for the appellant, Amanda Hart Elcan.

David Scott Parsley and Joshua G. Strickland, Nashville, Tennessee, for the appellee, Clarence Andrew Elcan.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

This is a post-divorce dispute about the residential parenting schedule. Clarence Andrew Elcan ("Father") and Amanda Hart Elcan ("Mother") were divorced on December 4, 2007. The parenting plan incorporated into the final divorce decree named Mother the primary residential parent of the three minor children and structured Father's parenting time as follows: 5:00 to 7:00 Wednesday evenings during school-year, every other weekend, Wednesday overnight visitation during the summer, two uninterrupted summer weeks, and the option to drive the children to school at least three mornings per week.

During the months following their divorce, Mother and Father filed many petitions for criminal contempt against each other. As pertinent to this appeal, Mother's May 29, 2009

petition for criminal contempt alleged that Father returned the children late fourteen times after his 5:00 to 7:00 Wednesday evening parenting time. Father's June 1, 2009 petition to modify visitation requested an extension such that he would keep the children overnight on school-year Wednesdays.

The trial court heard the outstanding petitions on December 1, 2009. By order entered January 12, 2010, the court found beyond a reasonable doubt that Father was guilty of returning the children late fourteen times and took under advisement Father's punishment for the fourteen counts of criminal contempt. In addition, the court modified the parenting plan such that Father would keep the children overnight on Wednesdays and take them to school on Thursday mornings, but that he would no longer have the right to drive the children to school three days per week. The court "advised the parties that this midweek overnight residential time will be eliminated should it adversely affect the minor child(ren)" and further found "that it would be in the best interest of the minor children to place both parties under a restraining order to prohibit them from having members of the opposite sex spend the night under inappropriate circumstances when the children are also in that party's possession."

On June 10, 2010, Mother filed another petition for criminal contempt in which she alleged that Father shared his bed with his girlfriend on seventeen occasions during which the children were in his care. Mother sought a restraining order prohibiting Father from having overnight visits with the children pending a hearing and further requested that the court impose the punishment it took under advisement in the January 12, 2010 order and eliminate Father's Wednesday overnight visits with the children. On June 16, 2010, the court modified the January 12, 2010 order to restrain and enjoin Father "from having anyone with whom he is romantically involved to stay overnight with him while he is exercising residential time with any of the minor children in this cause." On July 15, 2010, the court modified the June 16, 2010 order to read "stay overnight in the same bed with him." However, after a January 27, 2011 hearing, the court dissolved the restraining order against Father and dismissed Mother's June 10, 2010 petition for criminal contempt by order entered February 16, 2011.[1] The court noted that the original January 12, 2010 restraining order was too vague to be enforceable and that case law "supports the position also that you have to have a factual basis for the entry of a restraining order, not just a fear of what might happen to the children in the future if they are exposed to a heterosexual relationship between a man and a woman who are not married." Furthermore, the court denied Mother's requests to impose punishment and to eliminate Father's Wednesday overnight parenting time, finding that:

---

[1] The testimony and evidence presented at the December 1, 2009 and January 27, 2011 hearings will be summarized below as relevant to the issues on appeal.

[T]he children are doing well as a result of the modification of the Wednesday overnight parenting time with Father. The Court has not heard any proof to the contrary. The Court finds that the children are not being harmed in any way whatsoever by the Wednesday overnight visitation. The Court finds that the children are doing well as a result of the modification of the Parenting Plan and that there is no proof to the contrary.

Mother appeals from the January 12, 2010 and February 16, 2011 orders.

ISSUES

Mother presents two issues for review: (1) Whether the trial court erred in its January 12, 2010 order by modifying the parties' parenting plan to give Father overnight residential time on Wednesday evenings; and (2) Whether the trial court erred in its February 16, 2011 order by failing to modify the parties' parenting plan to eliminate the overnight aspect of Father's Wednesday residential time.

STANDARD OF REVIEW

Our review of the trial court's findings of fact is de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kendrick v. Shoemake,* 90 S.W.3d 566, 570 (Tenn. 2002); *Marlow v. Parkinson,* 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007). Determinations regarding custody and visitation "often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves." *Gaskill v. Gaskill,* 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). We "give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Boyer v. Heimermann,* 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). Moreover, trial courts necessarily have broad discretion to make decisions regarding parenting arrangements to suit the unique circumstances of each case. *See Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001); *Chaffin v. Ellis,* 211 S.W.3d 264, 286 (Tenn. Ct. App. 2006). Therefore, "a trial court's decision on visitation will not ordinarily be reversed absent some abuse of that discretion." *Eldridge*, 42 S.W.3d at 85. "An abuse of discretion can be found only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id*. at 88.

ANALYSIS

Tennessee Code Annotated section 36-6-101(a)(2)(C) provides:

If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or *other circumstances making a change in the residential parenting time in the best interest of the child*.

(Emphasis added). This statute "sets a very low threshold for establishing a material change of circumstances. Indeed, merely showing that the existing arrangement has proven unworkable for the parties is sufficient to satisfy the material change of circumstances test." *Rose v. Lashlee,* M2005-00361-COA-R3-CV, 2006 WL 2390980, at *3 n.3 (Tenn. Ct. App. Aug. 18, 2006).

Custody and visitation arrangements are recognized as "among the most important decisions confronting a trial court in a divorce case." *Chaffin,* 211 S.W.3d at 286 (quoting *Rice v. Rice,* M1998-00973-COA-R3-CV, 2001 WL 812258, at *2 (Tenn. Ct. App. July 19, 2001)); *See also In re Lamont B., II,* M2004-02027-COA-R3-JV, 2006 WL 1727332, at *3 (Tenn. Ct. App. June 23, 2006). In making such decisions, the needs of the child are paramount with the desires of the parent being secondary. *Chaffin,* 211 S.W.3d at 286. This determination is fact driven, and the trial court must consider all of the facts and circumstances involved in reaching its decision. *Id.*

1. January 12, 2010 Order: Modifying the Parenting Schedule

In reaching its decision to modify the parenting schedule, the trial court considered extensive testimony in which both Mother and Father agreed that the Wednesday evening visitation schedule was working poorly. Both Mother and her private investigator testified that Father had never timely returned the children to their Mother's home on Wednesday evenings and that he was eighty minutes late on average. Mother explained that Father's lateness botched the children's nighttime schedule, pushed back their bedtime, and caused problems on Thursdays:

Q. Have you noticed anything different on Thursdays?

A. Yes.

Q. What have you noticed?

A. Getting up in the morning is very difficult. Thursday afternoon they're tired. They're grumpy. Doing homework is harder.

Father fully admitted that he never timely returned the children on Wednesday evenings, but explained:

The biggest difficulty is completing my [oldest son's homework]. He's in the third grade. He has a pretty extensive amount of homework this year for the first time. So the biggest difficulty is–well, I coach [my oldest son's] soccer team. I moved the soccer practices to Wednesdays because [Mother] threatened to not let him go to soccer practices. Soccer practice ends at 5:15, which means it's really 5:30 when we leave the field, which means it's 5:45 before we get home. By the time we eat dinner, you know, it's 6:15. That only leaves a 45-minute window. That's if we're running very efficiently. You know, so realistically it's more like a 30-minute window to get homework done and to have some sort of, you know, interactive time. We usually play Uno regularly. You know, just sit down and play some sort of game and have some sort of interactive time. The window is just not great enough.
. . .

The other reason it's difficult to leave is the children aren't ready to leave yet. They love me. I love them. I don't feel like I see them enough. They don't feel like they see me enough. When it comes time, you know, to prepare to go they fight me a little bit. As a parent, I must say no, it's time to go. Go get in the automobile right now. However, that's not always–you know, that's not always that simple.

Based on the evidence adduced at the December 1, 2009 hearing, the trial court found a material change of circumstance affecting the children's best interests. Accordingly, the court fashioned a remedy for the problems resulting from Father's 5:00 p.m. to 7:00 p.m. midweek visitation by allowing the children to spend the night with their Father on Wednesdays. The intended effect of this remedy was for the children to no longer feel rushed on Wednesday evenings, to no longer arrive late at their Mother's home, and to get to bed on time. The trial court noted that it "did not want to punish [the] children by taking time away from [Father]," but warned Father that it would eliminate the Wednesday overnight visits if the children suffered at all, did not get adequate sleep, or began having trouble in school.

Mother argues that "Father repeatedly violated the rules regarding his Wednesday visitation and the trial court in essence changed the rules so that Father could follow them, rather than simply enforcing the rules as written." While we can understand Mother's frustration, we note that, based on the record before us, the trial court was clearly concerned that the solution to the Wednesday evening visitation problem be one that was in the *children's* best interest, rather than one that would either reward Mother for following the rules or punish Father for breaking them. *See Barnhill v. Barnhill,* 826 S.W.2d 443, 453 (Tenn. Ct. App. 1991). Moreover, the trial court's ruling was well within the spectrum of rulings that might reasonably result from the application of the correct legal standards to the evidence found in the record.

Having determined that the evidence does not preponderate against the trial court's factual findings and that it did not abuse its discretion, we affirm the trial court's modification of the parties' residential schedule.

### 2. February 16, 2011 Order: Maintaining Wednesday Overnight Visitation

Approximately one year after it entered the order granting Wednesday overnight visitation, the trial court heard Mother's petition for criminal contempt in which she requested the elimination of the children's Wednesday overnight visitation with their Father due to Father's having his girlfriend spend the night while the children were at his home. Both parties again presented extensive testimony. Mother testified that the overnight aspect of the Wednesday visitation schedule was not working well for the children, and that "it's just incredibly stressful to have to, in the middle of the school week, to have to pack up all your school stuff, all of your sport stuff, all of your personal stuff and move it to another household." Mother detailed incidents of the children forgetting to go to school with items such as their required uniform belts, school bag, shoes, or study sheets, and noted that one child had stomachaches on some Thursday afternoons, though she later admitted that these predated Wednesday overnight visitation. Mother described Thursday afternoons as "very difficult" and Thursday afternoon homework time with the children as "a nightmare," but admitted that the children's report cards showed that they were doing "[w]ell, as always" since Wednesday overnight visitation had been adopted.

Father described the effect of Wednesday overnight visitation quite differently than Mother:

> Q. Tell us about homework. First of all, since His Honor allowed you this great, great thing, to have your children over on Wednesday nights, how many times have they been late for school?

A. One time. I think this has been in an entire year, maybe a little more than a year, I'm not sure, but they have been late one time. It was by two minutes . . . .

Q. Well, you heard what your former wife says as relates to the Wednesdays. She is obviously not happy with them. Tell [the court] how you think the Wednesdays are going and whether you're happy and what a difference it has made for you, if any.

A. Wednesday nights have been fantastic. Thank you, Your Honor, for granting me the Wednesday nights. That has absolutely been a blessing . . . And since the overnights have been granted to me, it's a different–it's a completely different field.

Q. Tell His Honor what you do. How did that help your Wednesday time with the children?

A. Instead of feeling rushed, instead of feeling like there is a deadline and there is a private investigator taking pictures of me taking my children home late, we are able to come home and relax. The children change clothes. They can put on their pajamas. They have full wardrobes at my home. . . .

Q. Despite all these things that [Mother] has said, the children continue to do very well in school, correct?

A. They do continue to do very well in school. And I believe Wednesday is an interruption of a regular routine at their mother's home, but it is an interruption that is needed. I need more time with them. They need more time with me. We come home. We prepare dinner. They all sit down and do homework. I set the table every single Wednesday night. We have a family dinner together . . . .

The trial court's finding "that the children are doing well as a result of the modification of the Parenting Plan and that there is no proof to the contrary" reflects the credibility and weight that the court afforded to Mother's testimony concerning the Wednesday overnight visitation. In its ruling from the bench, the trial court addressed the parties and reasoned:

I know it's not perfect, and it never will be, to transport these children for an overnight in the middle of the week. I know it's not the best situation, but I believe that there is proof that it's not harming the children. In fact, it looks like the children are doing well as a result of it. Now, if I have some other proof to the contrary, I'm happy to take another look at it down the road. And that's a good warning to [Father] to continue doing what you are doing to try to make things as easy as possible for these children when they have to gather all of their gym equipment, their athletic equipment, their clothes, their uniforms, their homework. It's not an easy thing when you are dealing with children, particularly at these ages. It's tough for them to learn that kind of responsibility this early, but it is important to learn, and they are in the process of learning. In the process of learning, they are going to make mistakes, they are going to forget things, they are going to not do exactly what adults might do and remember what they are supposed to bring every time. It's just part of what happens when you have these kinds of situations. So I just don't find that the children have been adversely affected by the Wednesday night visitation.

Finding no abuse of discretion, we affirm the trial court's refusal to eliminate the Wednesday overnight visits.

CONCLUSION

Given the record before us, we conclude that trial court did not abuse its discretion and we find no basis on which to reverse the trial court's determination that the children should spend Wednesday nights during the school year with their Father. We accordingly affirm.

Costs of appeal are assessed against Amanda Hart Elcan, the appellant.

_____
ANDY D. BENNETT, JUDGE