IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 2, 2021 Session

## THERESA DOTY v. CITY OF JOHNSON CITY

**Appeal from the Circuit Court for Washington County**
**No. 37484          Jean A. Stanley, Judge**

_____

**No. E2020-00054-COA-R3-CV**

_____

This is a personal injury action in which the defendant tortfeasor claims that the trial court erroneously excluded evidence concerning plaintiff's claimed medical expenses.   On appeal, we affirm the trial court's rulings on the admissibility of evidence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and ARNOLD B. GOLDIN, J., joined.

K. Erickson Herrin, Johnson City, Tennessee, for the appellant, City of Johnson City.

Alexander W. Gothard, Knoxville, Tennessee, for the appellee, Theresa Doty.

## OPINION
## I.          BACKGROUND

On April 6, 2017, a man employed by the City of Johnson City ("the City") lost traction while driving a tractor and directly struck Theresa Doty ("Plaintiff") when she was riding in a car.  Plaintiff was transported to the Emergency Room at Johnson City Medical Center ("JCMC") where she complained of right shoulder pain.  Plaintiff had undergone two previous right shoulder surgeries, the second of which was performed by Dr. Gregory Stewart.  After the tractor accident, Plaintiff's doctor recommended a third surgery which was performed at JCMC in June 2017.  Nine months later, Plaintiff was released from Dr.

Stewart's care. Plaintiff incurred substantial medical bills as a result of her injury and rehabilitation from the accident at issue.

Plaintiff filed this lawsuit, in which she sought compensatory damages in the amount of $300,000 for her medical bills and subsequent recovery. She then provided an itemization of the medical and hospital bills that were incurred pursuant to Tennessee Code Annotated section 24-5-113(b), which creates a rebuttable presumption of the reasonableness of such bills as follows:

> [I]n any civil action for personal injury brought by an injured party against the person or persons alleged to be responsible for causing the injury, if an itemization of or copies of the medical, hospital or doctor bills which were paid or incurred because of such personal injury are served upon the other parties at least ninety (90) days prior to the date set for trial, there shall be a rebuttable presumption that such medical, hospital or doctor bills are reasonable.
>
> Any party desiring to offer evidence at trial to rebut the presumption shall serve upon the other parties, at least forty-five (45) days prior to the date set for trial, a statement of that party's intention to rebut the presumption. Such statement shall specify which bill or bills the party believes to be unreasonable.

The City stipulated to its liability and to the necessity of Plaintiff's medical treatment but objected to the reasonableness of the computation as reflected in the undiscounted medical bills provided by Plaintiff. The City sought to rebut the reasonableness of such bills through the following two witnesses (1) Dr. Stewart, who offered a general opinion concerning the "out of control" billing practices at JCMC and (2) Marc Chapman, who offered his expert opinion concerning the general inaccuracy of the amount billed in comparison to the amount accepted as payment in full by JCMC. Plaintiff responded that the proffered testimony violated the collateral source rule, which bars a defendant in a personal injury case from introducing evidence of payments or benefits the plaintiff received from a third-party for the plaintiff's damages. Plaintiff also questioned Mr. Chapman's expert qualifications.

The trial court found in favor of Plaintiff, finding that Dr. Stewart's testimony violated the collateral source rule and that Mr. Chapman's methodology had not been proven or tested. The case proceeded to a bench trial, after which the trial court found in favor of Plaintiff and awarded her compensatory damages and additional damages for her pain and suffering. This timely appeal followed.

## II.     ISSUE

We restate the sole dispositive issue on appeal as follows:  Whether the trial court erroneously excluded the City's proffered evidence to rebut the presumption of reasonableness of Plaintiff's medical bills.

## III.     STANDARD OF REVIEW

Rulings on the admissibility of evidence are within a trial court's discretion.  *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999).  Questions regarding the qualifications, admissibility, relevancy, and competency of expert testimony are likewise left within the broad discretion of the trial court.  *See McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263-64 (Tenn. 1997); *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993).  "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'"  *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).  We review the decision of the trial court to determine:

> (1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives.

*White*, 21 S.W.3d at 223.  Improper admission or exclusion of evidence requires a new trial if the outcome of the trial was affected.  Tenn. R. App. P. 36(b).

To the extent that the issue raised in this appeal requires us to interpret and apply statutes, we note that statutory interpretation is a question of law, which we review de novo, affording no presumption of correctness to the conclusions of the trial court.  *State v. Crank*, 468 S.W.3d 15, 21 (Tenn. 2015); *In re Baby*, 447 S.W.3d 807, 817 (Tenn. 2014); *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013) (citing *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009)).

## IV.     ANALYSIS

The City argues that the combination of Dr. Stewart's testimony and Mr. Chapman's opinion is "sufficient evidence challenging the plaintiff's nondiscounted medical bills such that her reliance on the [statutory] presumption of reasonableness . . . has been rebutted."  We will address each witness's proffered testimony in turn.

Dr. Stewart's proffered deposition testimony is as follows:

Q:      Would you agree, Dr. Stewart, that there is a significant difference between a typical billing and what might be a reasonable charge based in reality?

A:      There is a large difference between the typical bill that is sent for medical services . . . and what is reflected in reality with the money that changes hands.

Q:      And so when you testified that these bills . . . all of that are typical billings, what were shown, typical undiscounted billings for this area, right?

A:      That's correct.

Q:      But that's – in large measure there's a difference between a typical – what medical providers typically send out and what they are paid in reality.

A:      That's correct.

Mr. Gothard:         Objection, Collateral source.

* * *

Q:      Okay.  And with respect to the hospital bills that you were shown . . . it was my understanding earlier that you - - in your discovery deposition that you did not feel qualified to assess what those – how those hospital charges came into existence.

A:      That's correct.  I don't know how they come up with those numbers. I don't know how they set those charges.  And I don't know how they actually get paid, other than through their voluntary contractual agreements with different entities.

Q:      And that's true with the radiology bill, the preoperative bill, the stress test bill, the ambulance bill, isn't that – wouldn't that be fair to say?

A:      That's correct.

Q:      Now, on Watauga Orthopaedics' bills, you have a manager that does your negotiating with third parties?

A:      That's correct.

Q: And so exactly how Watauga's non-discounted billable items that are typical of other orthopaedic associations, you're not really sure how those amounts are established either, are you?

Mr. Gothard: Objection, collateral source.

A: I know peripherally. I know that we basically set up contracts with third party payers to pay us a certain amount. Sometimes they are fixed amounts, sometimes they are percentages of Medicare rates for our services.

Q: But those billing rates, if they are used for negotiating with a third party, for example, where those numbers come from . . .

A: That's correct.

Q: . . . is exclusive to your manager. That's his job, correct?

A: That's correct.

In sum, the City offered Dr. Stewart's testimony to establish that the amount billed is not the amount paid due, in part, to private contracts between the hospital and third parties. The proffered testimony is the very type of evidence prohibited by the collateral source rule, which provides that "[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." *Dedmon v. Steelman*, 535 S.W.3d 431, 442 (Tenn. 2017) (internal quotation omitted). We affirm the trial court's exclusion of Dr. Stewart's proffered testimony.

The City likewise submitted Mr. Chapman's affidavit to rebut the presumption of reasonableness by establishing what it believed was the actual reasonable and regular rate for services rendered by JCMC. Mr. Chapman, the founder and co-owner of Chapman Consulting, conducts medical bill reviews using a software program he developed to determine a fair and reasonable hospital bill pricing methodology. Concerning his qualifications, his report provided as follows:

I regularly consult with individuals, attorneys, third party administrators, insurance companies and hospitals regarding hospital pricing and billing, and I have served as an expert witness in numerous state and federal cases with regard to hospital and health care prices and health care reimbursements. I regularly review, evaluate and opine on the reasonableness of hospital charges and other healthcare provider's charges. I am a former Reimbursement Manager for HCA Columbia Hospital in Dallas, Texas, a former Director of Reimbursement for McKennan Hospital in Sioux Falls,

South Dakota, and former Audit Coordinator and Medicare Auditor for Blue Cross/Blue Shield. I have been involved in the hospital and the health care billing industry from 1983 to present, have a BA in Business Administration/Accounting in 1983 from Augustana College. I have reviewed and am familiar with [the] hospital and [healthcare providers'] charges in the Houston [sic] market. I am fully competent to testify as to the reasonableness of hospital charges and other healthcare providers.

In his affidavit, Mr. Chapman opined as follows:

In the research that I have done with the financial information that I have in our database, I have come to the conclusion that, over time, hospital prices have risen disproportionately to their cost. Further research has also been disclosed that billed charges have risen excessively in comparison to the actual collection rate for billed charges. In fact, hospital charges are so disproportionate to the cost of care and the actual reimbursement rates that they do not come close to reflecting the true market value or the reasonable and regular rate for medical services, goods, and supplies.

I conducted a review of the billed charges from [JCMC]. I completed the review and found the same pattern is taking place at this hospital. I have included a graphic depiction of what has been happening with the billed charges at [JCMC]. The first graph illustrates that this hospital has increased billed charges at a rate that far exceeds the cost of providing medical services. The second graph compares billed charges to the amounts accepted as payment for those billed charges. The comparison of the graphs demonstrates that the net collection amount has a consistent correlation to the hospital's expenses, while the billed charges demonstrate no correlation to cost or reimbursements whatsoever.

Based upon his calculations using his software, Mr. Chapman believed the reasonable rate for Plaintiff's charges was $39,952.46 as opposed to the $204,196 in undiscounted medical bills submitted. He explained that his reasonable rate is calculated using the specific hospital's data and the area and State financial data to formulate a rate that represents the amount the hospital has been accepting from private payers for medical goods and services. He explained that JCMC's overall collection percentage is 16.4% of billed charges and that private payers on average are paying 19.9% of JCMC's billed charges.

We, like the trial court, agree that Mr. Chapman possessed exemplary qualifications and presented an impressive methodology. However, to be admissible, expert testimony must be relevant and it must satisfy Tennessee Rules of Evidence 702 and 703. Rule 702 states, "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified

as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Rule 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

In determining the reliability of scientific testimony, the Tennessee Supreme Court listed several nonexclusive factors that courts may consider, including:

> (1) whether scientific evidence has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether . . . the evidence is generally accepted in the scientific community; and (5) whether the expert's research in the field has been conducted independent of litigation.

*McDaniel*, 955 S.W.2d at 265. The record is devoid of information establishing whether Mr. Chapman's methodology has been tested or has been subjected to peer review. A potential rate of error was also not submitted and there is no indication that his methodology has been accepted in the scientific community. Further, his methodology was largely based upon what the hospital billed versus what it regularly received as payment, a clear violation of the collateral source rule when applied specifically to Plaintiff's hospital billings in the report. *See generally Dedmon*, 535 S.W.3d at 466-67 (precluding evidence of discounted rates accepted by the hospital in an attempt to rebut the presumption of reasonableness of medical billings). In consideration of the foregoing, we affirm the trial court's exclusion of Mr. Chapman's proffered evidence.

## V. CONCLUSION

For the reasons stated, we affirm the decision of the trial court and remand for such further proceedings as may be necessary. Costs on appeal are assessed to the appellee, City of Johnson City.

_____
JOHN W. MCCLARTY, JUDGE